ROBBINS *v.* STATE OF INDIANA.

[No. 30,872. Filed April 5, 1968.]

*Ferdinand Samper* and *Forrest Bowman, Jr.,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Dennis J. Dewey,* Deputy Attorney General, for appellee.

LEWIS, C. J.—The appellant was indicted by the Grand Jury of Marion County on a charge of First-Degree Murder.

The indictment, omitting the caption, signature and formal parts thereof, is as follows:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that Marjorie Yvonne Robbins on or about the 18th day of June, A.D., 1964, at and in the County of Marion and in the State of Indiana, did then and there unlawfully, feloniously, purposely and with premeditated malice kill and murder Terry Odetta Robbins, a human being, by then and there unlawfully, feloniously, purposely and with premeditated malice beating, striking and strangling the said Terry Odetta Robbins by asphyxiation; and so the Grand Jurors aforesaid, upon their oaths aforesaid, do say and charge that the said Marjorie Yvonne Robbins in the manner and form and by the means aforesaid did unlawfully, feloniously, purposely and with premeditated malice kill and murder the said Terry Odetta Robbins, then and there being . . ."

The appellant entered a plea of not guilty and also a special plea of not guilty by reason of insanity. The jury found the defendant guilty of First-Degree Murder as charged in the indictment, and she was sentenced to the Indiana Women's Prison during life.

The motion for a new trial contained fifty-five (55) claimed errors. In this opinion the following claimed errors will be discussed:

"43. Error of law occurring at the trial in this, the Court erred in overruling the defendant's oral motions to suppress oral and written admission and confessions which motions and ruling are as follows:

MR. SAMPER: At this time, in the absence of the jury, the defendant moves for leave of court to present various witnesses to attempt to establish the inadmissibility of oral statements allegedly made and reduction of those statements to writing.

THE COURT: In other words, a motion to suppress the confession?

MR. SAMPER: Oral confession and written confession.

MR. NEW: There is no objection from the State to getting at the matter now in the absence of the jury.

THE COURT: No objection on your part to doing it this way?

MR. SAMPER: We appreciate the opportunity otherwise we would have to bring the jury in and back out again.

·  ·  ·  ·  ·

THE COURT: Are you gentlemen ready to proceed now on argument of defendant's motion to suppress oral admissions and written confessions?

MR. SAMPER: Yes sir.

MR. NEW: Yes.

MR. BOWMAN: The motion here is predicated on the constitutional provision in the Federal Constitution, 4th, 5th, 6th and 14th amendments, as well as the statutes of the State of Indiana with respect to admission-confessions. I'd like to argue for the benefit of the court primarily federal law. We are proceeding under two theories with respect to federal law, first-in-voluntaryness, which we feel comes under the 5th and 14th amendments-second, denial of counsel, under the 6th and 14th amendments. . . .

THE COURT: The court overrules the defendant's oral motion to suppress oral admissions and written confessions.

44. Error of law occurring at the trial in this the Court erred in admitting in evidence over the defendant's objection, State's Exhibit No. 11, which offer, objection and ruling are set out as follows:

MISS WESSNER: The State offers in evidence State's Exhibit No. 11.

MR. SAMPER: The defendant will object to State's Exhibit No. 11 for the reasons assigned to the court on a prior motion.

THE COURT: The objection will be overruled."

On the trial of the case the State offered in evidence oral admissions and a written confession made by the defendant. The written confession was identified as State's Exhibit No. 11. The circumstances under which this evidence was obtained was presented by the appellant in her objections to the introduction of this evidence. Appellant contends that the admissions and the confession were obtained in violation of the

4th, 5th, 6th and 14th amendments to the Constitution of the United States as well as the Constitution of the State of Indiana.

The appellant, at the time the confession was obtained, was twenty-three (23) years of age; her education had ceased in the eighth grade when she was sixteen (16) years of age. She had been described by psychologists and psychiatrists as a person who borderlined on feeble-mindedness. Also, on the day of her arrest she was suffering from an emotional disorder. Police officers had ordered her to come to their headquarters in the City of Indianapolis where they told her to give a statement. The appellant was without previous experience with law enforcement agencies or the procedures of courts. Her husband had been physically separated from her upon her arrival at Police Headquarters where she was interrogated by one officer and then, finally, by a second officer. When the second officer joined in the interrogation he indicated that he suspected the appellant of homicide. Finally, one of the interrogators accused Mrs. Robbins of the crime. Very shortly thereafter she admitted her guilt, and she was then told that she was under arrest. She was also told that anything she said would be used in court against her.

The appellant has put forth in her brief, part of the testimony of one of the police officers concerning the circumstances surrounding her arrest, such excerpt being as follows:

"Since you have admitted you have killed your baby, I will have to tell you you are under arrest for the murder of your baby, and anything you tell us will be used in Court against you. You have said you killed your baby. We would like for you to tell us about it. You don't have to. If you want a lawyer, you can have an attorney before you make any statement at all." She said "I don't know any lawyers. I don't know any. What is going to happen to me?" She repeated that several times. I told her this, "Even if she don't have an attorney she could not be tried for this offense till she was represented by counsel, but we would like for her to tell us just what happened. Then she started telling us what happened and admitted her participation in this."

Immediately after the conversation set out above the appellant's statement was reduced to writing in question and answer form, and was signed by her.

The appellant contends that even though the duration of the interrogation was short, the confession obtained from the appellant herein was not voluntary and, therefore, was obtained in violation of her Federal Constitutional rights to counsel, due process of law, and freedom from self-incrimination. Appellant cites as authority for this position, the following:

> ". . . The limits in any case depend upon a weighing of the circumstances of pressure against the power of resistance of the person confessing. What would be overpowering to the weak of will or mind might be utterly ineffective against an experienced criminal." *Stein* v. *New York* (1952), 346 U. S. 156, 185, 97 L. Ed. 2d 1522, 73 S. Ct. 1077. See also, *Reck* v. *Pate* (1961), 367 U. S. 433, 6 L. Ed. 2d 948, 81 S. Ct. 1541.

Appellant urges as very significant, those authorities which indicate that sub-normal intelligence is almost a hallmark of a coerced confession. *Payne* v. *Arkansas* (1958), 356 U. S. 560, 2 L. Ed. 2d 975, 78 S. Ct. 844; *Fikes* v. *Alabama* (1957), 352 U. S. 191, 1 L. Ed. 2d 246, 77 S. Ct. 281.

> ". . . But this case is novel only in the sense that the evidence of insanity here is compelling, for this Court has in the past reversed convictions where psychiatric evidence revealed that the person who had confessed was 'of low mentality, if not mentally ill,' *Fikes* v. *Alabama, supra,* . . . or had a 'history of emotional instability,' *Spann* v. *New York, supra.* . . ." *Blackburn* v. *Alabama* (1960), 361 U. S. 199, 4 L. Ed. 2d 242, 80 S. Ct. 274.

Appellant argues that a person of her mentality cannot be legally interrogated in the manner in which she was, that is, by being brought to tears by accusations, and then being told that a written statement had to be given.

It is appellant's further position that voluntariness does not necessarily flow from the absence of physical violence or overt

threats thereof. Subtle pressures are adequate, and sufficient, to take a confession from the realm of being voluntary.

The appellant's trial was prior to the *Miranda* doctrine. However, appellant cites *Johnson* v. *New Jersey* (1966), 384 U. S. 719, 16 L. Ed. 2d 882, 890, 86 S. Ct. 1772, in order to urge the Court that even though *Miranda* was non-retroactive it could be of assistance in a full understanding of the case at bar. More particularly, appellant quotes from *Johnson* v. *New Jersey, supra,* as follows:

> "At the same time, our case law on coerced confessions is available for persons whose trials have already been completed, providing of course that the procedural prerequisites for direct or collateral attack are met. See *Fay* v. *Noia,* 372 U. S. 391, 9 L. Ed. 2d 837, 83 S. Ct. 822 (1963). Prisoners may invoke a substantive test of voluntariness which, because of the persistence of abusive practices, has become increasingly meticulous through the years. See *Reck* v. *Pate,* 367 U. S. 433, 6 L. Ed. 2d 948, 81 S. Ct. 1541 (1961). That test now takes specific account of the failure to advise the accused of his privilege against self-incrimination or to allow him access to outside assistance. . . . Thus while Escobedo and Miranda provide important new safeguards against the use of unreliable statements at trial, the nonretroactivity of these decisions will not preclude persons whose trials have already been completed from invoking the same safeguards as part of an involuntariness claim."

Appellant's final conclusion on this claimed error is that the officers informed her in a "tardy manner" concerning her right to counsel. Her answer, when informed of her right of counsel, was "I don't know any lawyers." Appellant now argues that this certainly was not a knowledgeable waiver of her right to counsel, but rather that this answer should be characterized as a request for counsel. Under these facts, appellant argues that the *Escobedo* doctrine alone requires reversal.

The State of Indiana as appellee herein contends that appellant's confession was voluntary, and argues that the record

is without any evidence of coercion on the part of investigating officers in eliciting appellant's confession.

At the time this case was argued orally, the State of Indiana-appellee conceded that the appellant was of sub-standard mentality and that she had borderline I. Q. In fact, appellant was described by one of the psychiatrists who testified in this trial as a "borderline feeble-minded individual."

After considering all of the evidence with regard to Exhibit No. 11 and the oral admissions made by the appellant, we are of the opinion that appellant's admissions against interest and her written confession herein were not voluntary acts. In summarizing this conclusion we have considered the evidence in the record where appellant was laboring under the belief that the victim, appellant's three-year old child, was still alive even though appellant was accused by the officers of having killed the child. This mental disorder on the part of the appellant continued throughout her trial and caused the defense lawyers to have an extremely burdensome task.

The mental weakness of the appellant was such that we feel that the arresting and investigating officers had little trouble in eliciting Exhibit No. 11 from her. This was elicited and prepared for appellant's signature without the officers advising appellant of her absolute right to remain silent. The officers failed to advise her that she had an absolute right to counsel and it was their duty to advise her of this right the moment she became a suspect. But, even after she was a suspect and after the officers led her to believe they needed clarifying statements, this mentally defective suspect was not afforded the protection that the Constitution of the United States and the Constitution of the State of Indiana demanded that she have. Under all of the attendant circumstances in the case at bar we conclude that the confession was not the free and voluntary act of the appellant. It was not freely self-determined; it was not the product of a rational intellect and of free will. The confession was obtained under circumstances

where the accused's will was easily overborne by experienced interrogating officers.

We conclude, therefore, that the Court committed error in admitting Exhibit No. 11 over objection. *Malloy* v. *Hogan* (1964), 378 U. S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489; *Blackburn* v. *Alabama, supra; Fikes* v. *Alabama, supra.*

Judgment of the Trial Court is reversed with instructions to grant appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.

Arterburn, Hunter, Jackson and Mote, concur.

NOTE.—Reported in 235 N. E. 2d 199.