Othel DOBBS, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 1–281A64.

Court of Appeals of Indiana, First District.

April 15, 1982.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Latrialle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Defendant-appellant Othel Dobbs (Dobbs) appeals his conviction of Confinement with a Deadly Weapon, a class B felony. His appeal presents the following issues for review:

(1) Whether the court erred in admitting into evidence taped statements made by the defendant at the time of his arrest.

(2) Whether there was sufficient foundation laid for the introduction into evidence of defendant's tape-recorded statement.

(3) Whether the court erred in refusing to admit defendant's exhibit # 54.

(4) Whether Ind.Code § 35–42–3–3 and Ind.Code § 35–41–1–2 are unconstitutional as applied to this case.

Carol and Othel Dobbs were living as man and wife until December 18, 1979, at which time they separated. On the afternoon of December 22, 1979, Othel visited his home in Modoc, Indiana, and found his wife and three children there with Cecil McCracken, a friend of Carol Dobbs. Othel wanted to take the children with him and his wife refused. They argued and Othel left the house taking a shotgun and shells with him.

On the night of December 22, 1979, Carol Dobbs and her children stayed at Cecil McCracken's home. At approximately 4:05 a. m. on December 23, 1979, Othel appeared outside McCracken's home and screamed for Mrs. Dobbs to come outside. Dobbs then fired his shotgun and broke the glass out of the front door. Dobbs ordered his wife and children to get into the car. Dobbs drove to his home in Modoc, Indiana, stopping first for coffee at his stepmother's home.

Shortly thereafter, two deputies from the Randolph County Sheriff's department arrived at the Dobbs's residence in Modoc and Othel surrendered peacefully. The deputies took Dobbs into the kitchen, read him his *Miranda* rights, and then began questioning him.

■ The first issue for review is whether the trial court erred by admitting into evidence certain statements made by the defendant at the time of his arrest. The defendant contends that he did not give a knowing and voluntary waiver of his rights prior to making such statements. It is the State's burden to prove beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights. *Grey v. State*, (1980) Ind., 404 N.E.2d 1348. In considering whether this burden has been satisfied, we look at the totality of the circumstances to determine whether there were any inducements by way of violence, threats, promises, or other improper influence. *Id.* at 1351. However, in reviewing the trial court's ruling upon the issue, we will consider only the evidence which supports that ruling, when the evidence is in conflict, as well as any unrefuted evidence in the defendant's favor. *Id.*

■ Both Deputy Champ and Deputy Wright testified that Champ informed Dobbs of his *Miranda* rights prior to any interrogation at his home. Deputy Champ also testified that he again informed the defendant of his rights at the jail. Dobbs acknowledged having read the waiver form and signing it prior to giving his taped statement at the jail. There is no evidence of any violence, threats, promises or other improper influence bearing upon the defendant's conduct. The State sufficiently carried its burden of proving a voluntary and intelligent waiver of the defendant's rights. Thus, there is no basis for disturbing the trial court's ruling.

■■ The second issue presented for review is whether there was sufficient foundation laid for the introduction into evidence of Dobbs's tape-recorded statement. Dobbs insists that a proper chain of custody was not established for the recording. The law in this area is clear. The State is required to prove a complete chain of custody. However, the State is not required to exclude every remote possibility of tampering. *Mendez v. State*, (1977) 267 Ind. 309, 370 N.E.2d 323; *Williams v. State*, (1979) Ind., 387 N.E.2d 1317. Where the State has introduced evidence which strongly suggests the whereabouts of an exhibit at all times, such evidence will be considered sufficient for chain of custody purposes.

Deputy Champ taped the defendant's statement. He testified that he gave the tape to Julia Thomas of the Randolph County prosecutor's office until it was returned to Deputy Champ just before the trial. Champ testified that he listened to the tape and believed that it was accurate.

■ The evidence does show that the tape may have been handled by more than one person from the prosecutor's office and that Deputy Champ could not recall every question and answer on the tape. Such evidence is insufficient, however, to dis-

prove an adequate chain of custody. As stated earlier, the State is not required to exclude every remote possibility of tampering. Since the State had introduced evidence which strongly suggested the whereabouts of the tape at all times before it was admitted into evidence, there was no error.

The third issue for review is whether the trial court erred in refusing to admit into evidence Dobbs exhibit # 54, a diagram of his stepmother's house. During his stepmother's testimony, Dobbs attempted to introduce the diagram. The State objected on the grounds that Dobbs had failed to disclose the diagram prior to trial. The trial court sustained the State's objection on the grounds that failure to have earlier disclosed the exhibit to the State had violated local court rules on discovery.

Dobbs asserts that the importance of exhibit # 54 was to disprove certain parts of his wife's testimony. Carol Dobbs testified that her husband could see the car from inside his stepmother's house and thus, could have easily stopped her from leaving. Dobbs was not prevented, however, from refuting his wife's testimony. The trial court allowed Dobbs's stepmother to testify about the events that occurred and where in the house she and Dobbs stood on the morning of December 23, 1979. In addition, the exhibit was later admitted into evidence during the testimony of Robert Davis, a former state policeman who had prepared the diagram.

■■■ The trial court is given wide discretionary latitude in discovery matters, since the court has the duty to guide and control the proceedings and promote the discovery of truth. *Harris v. State*, (1981) Ind., 425 N.E.2d 112. Furthermore, the trial court's duty to manage the proceedings also includes directing the taking of testimony to insure that the rules of procedure and evidence will be followed to. *Lawson v. State*, (1980) Ind., 412 N.E.2d 759. Absent an abuse of discretion, the trial court's exercise of its power to control the proceedings will not be disturbed. *Boyd v. State*, (1979) Ind.App., 396 N.E.2d 920.

■■ Dobbs has not shown how he was prejudiced by the trial court's refusal to introduce the diagram during the testimony of his stepmother. All the evidence was ultimately before the court for its consideration. In addition, Dobbs had the opportunity to attack his wife's credibility through his stepmother's testimony. Consequently, we find no abuse of discretion by the trial court in this regard.

Finally, Dobbs contends that Ind.Code § 35–42–3–3 and Ind.Code § 35–41–1–2 are unconstitutional as applied in this case. It is his position that his conviction must rest on the statutory definition of a "deadly weapon" being an "unloaded firearm", since there is no evidence showing that the shotgun was loaded at the time of the confinement. Furthermore, he asserts the application of this definition in the present case violates his constitutional right to equal protection and substantive due process because an unloaded firearm is not as dangerous as a loaded firearm and to allow the two to carry the same culpability is unreasonable, arbitrary, and capricious.

IC § 35–42–3–3 raises the crime of criminal confinement from a class D felony to a class B felony if it is committed while armed with a deadly weapon. A "deadly weapon" as defined by IC 35–41–1–2 includes:

(1) A loaded or unloaded firearm; or

(2) A weapon, device, equipment, chemical substance, or other material that in the manner it is used, is readily capable of causing serious bodily injury.

The evidence shows that Dobbs had both the gun and the shells in his possession at the time of the confinement. Assuming the gun was unloaded, Dobbs certainly had the ability to reload it whenever he so desired.

■■ In addition, regardless of whether the gun was loaded or unloaded, it would qualify as a device readily capable of causing serious bodily injury, thus falling under section two of IC 35–41–1–2. His verbal threats demonstrated his intent to use the gun as a deadly weapon. Whether an object is or is not a dangerous or deadly weapon depends upon the manner in which

it is used. *See: Kidwell v. State*, (1967) 249 Ind. 430, 230 N.E.2d 590. Dobbs's proposition that his conviction has to rest on the definition of a "deadly weapon" being an "unloaded firearm" is without merit. Clearly, the facts of this case do not support a constitutional challenge to IC 35–42–3–3 and IC 35–41–1–2.

For all the foregoing reasons we find no trial court error and the conviction of Othel Dobbs for the crime of Confinement with a Deadly Weapon is affirmed.

RATLIFF, P. J., and NEAL, J., concur.