Nathaniel LAMB, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 483S133.

Supreme Court of Indiana.

May 1, 1984.

Donald C. Swanson, Jr., Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Nathaniel Lamb, was convicted by a jury of rape, a Class A felony, Ind.Code § 35–42–4–1 (Burns 1983 Supp.) and burglary, a Class B felony, Ind. Code § 35–43–2–1 (Burns 1983 Supp.) and was sentenced to the Indiana Department of Correction for concurrent terms of thirty and twenty years respectively. He raises five issues in this direct appeal which we have consolidated into the following two issues:

1. Whether the victim's identification of defendant was the product of an impermissibly suggestive identification procedure and whether there was sufficient evidence on the issue of the identification of defendant as the perpetrator of the rape and the burglary; and

2. Whether there was sufficient evidence to support the jury's verdict on the elements of the use of deadly force and the breaking into the victim's apartment.

A summary of the facts from the record shows that the victim lived in a downstairs apartment in a building which contained three apartments, one upstairs and two downstairs. On the evening of March 11, 1982, she checked to make sure all her doors were locked before she and her daughter went to bed around 10:00 p.m. Sometime between 2:00 a.m. and 3:00 a.m., the victim heard the doorbell on the outer door of the apartment building and then heard someone yell for "Eddie." She heard someone come down from the upstairs apartment and open the outer door; then both individuals went to the upstairs apartment. Later, she heard someone come down the steps and continue out the door. She noticed that she did not hear the outer door close and thought about leaving

her own apartment to close the door, but she was afraid so she remained in bed. She then fell back to sleep.

The victim was awakened by the barking of her dog and a banging and crashing noise. Her bedroom door was pushed open and a man grabbed her and told her to be quiet. The victim was able to see her assailant by the street light which shone through the sheer curtains of the windows and later was able to see his face when he forced her out into the kitchen where a light was on. She described her assailant as a black male with a mustache, around six feet tall with a medium build, wearing a blue stocking cap, a blue three-fourths length coat, and blue pants. He was carrying a "steel screw-driver type" object in his hand.

At one point, the victim began screaming that people upstairs would hear her and the assailant replied, "You mean Eddie." The assailant forced the victim into the living room and then into the kitchen and when the victim screamed, the assailant started choking her. The assailant picked up a butter knife in the kitchen and stated that he better take it because he might need it. He forced the victim back into the living room, then forced her to disrobe and have oral sex and intercourse. The assailant also forced the victim to carry her stereo equipment into the kitchen and he took the equipment out the back door. The victim obtained another good look at her assailant at this time. She called the police immediately after this incident.

A little later that morning, a police officer investigated an incident in which defendant was fighting with another man over the possession of some stereo equipment. Defendant stated that the other man had taken his stereo equipment, so the police officer marked the equipment, gave it to defendant, and noted his name and address. Later the officer heard the description of the burglar-rapist aired over the radio. He realized that defendant fit the description, was wearing the clothes that were described, and was in possession of stereo equipment. When the police

went to the victim's apartment, they showed her five photographs of persons that fit assailant's description. The victim immediately identified defendant's photograph as that of her assailant. The police drove the victim by the defendant's apartment on the way to the hospital so that she could identify the stereo equipment. When she was leaving the apartment, she saw defendant opening the trunk of his car but she could not identify him from the back. At the trial, the victim positively identified defendant as the man who raped and robbed her.

I.

Defendant first contends that the victim's identification of him was the result of an impermissibly suggestive confrontation and that the in-court identification was therefore improper. The confrontation occurred at defendant's apartment about one and one-half hours after the crime when defendant was being arrested and the victim was brought by to identify her stereo. The victim described this incident in the following manner:

A. "Well, when I was coming back out and getting into the police car, they had him opening up the trunk of his car, or something, and they asked me to turn back around and see if it was him, but I—he was all different—different clothing, and that, and it was dark."

Q. "Okay, could you identify him then?"

A. "Not from the back, no."

Q. "Okay, you didn't see his face then?

A. "No, I was too far inside the car."

 We have consistently held that confrontations between eyewitnesses and suspects immediately after the commission of a crime are permitted for the reason that it is valuable to have witnesses view a suspect while the image of the offender is fresh in their minds. *Whitlock v. State*, (1981) Ind., 426 N.E.2d 1292; *Williams v. State*, (1979) 271 Ind. 656, 395 N.E.2d 239. Whether any particular one-on-one confron-

tation is unduly suggestive is dependent upon the circumstances in which it is conducted. *Sims v. State*, (1980) Ind., 413 N.E.2d 556; *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509. The circumstances here were not unduly suggestive as the victim did not even view defendant's face and admitted that she could not identify him from the back.

■ Defendant also contends that there was not sufficient evidence to establish his identity as the perpetrator of the rape and burglary. Our standard for reviewing sufficiency claims is firmly established; on appeal the reviewing court does not weigh the evidence or judge the credibility of witnesses. Rather, we will examine only the evidence most favorable to the state, together with the reasonable inferences to be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the fact-finder's conclusion, it will not be set aside. *Rowan v. State*, (1982) Ind., 431 N.E.2d 805; *Wofford v. State*, (1979) 271 Ind. 518, 394 N.E.2d 100. Furthermore, it is well established that the uncorroborated testimony of the victim is sufficient to sustain a conviction. *Munsey v. State*, (1981) Ind. 421 N.E.2d 1115; *McCawley v. State*, (1980) Ind., 409 N.E.2d 594; *Dixon v. State*, (1976) 264 Ind. 651, 348 N.E.2d 401.

■ In this case, the victim was able to observe defendant's face in adequate lighting several different times during the attack and quickly picked out his photograph from a photographic array. She positively identified him at the trial. There was no unduly suggestive confrontation to taint the identification. Furthermore, defendant was seen by a police officer and a private investigator shortly after the crime wearing the clothes that the victim had described the perpetrator as wearing. Defendant also claimed ownership of the victim's stereo at that time. This was sufficient evidence of the identity of defendant as the perpetrator of the rape and burglary to support the jury's verdict.

## II.

Defendant also contends that there was not sufficient evidence on the use of deadly force to support his conviction for rape as a Class A felony. Our statute elevates rape to a Class A felony "if it is committed by using or threatening the use of deadly force, if it is committed while armed with a deadly weapon, or if it results in serious bodily injury to any person other than a defendant." Ind.Code § 35–42–4–1 (Burns 1983 Supp.). The term "deadly force" is defined as a "force that creates a substantial risk of serious bodily injury," Ind.Code § 35–41–1–7 (Burns 1983 Supp.), and "deadly weapon" is defined as "a weapon, device, equipment, chemical substance, or other material that in the manner it is used ... is readily capable of causing serious bodily injury." Ind.Code § 35–41–1–8 (Burns 1983 Supp.).

Here, the victim testified that defendant had a "steel screw-driver type" thing in his hand and that he repeatedly stated "Don't make me hurt you." She also testified that he choked her when she started screaming. The jury was shown how the screw-driver object was held by defendant in threatening the victim.

■ We have consistently held that whether an object is or is not a deadly weapon depends upon the manner in which it is used. *Cummings v. State*, (1979) 270 Ind. 251, 384 N.E.2d 605; *Liston v. State*, (1969) 252 Ind. 502, 250 N.E.2d 739; *Dobbs v. State*, (1982) Ind.App., 433 N.E.2d 848. It is not necessary that the weapon be held on the victim at all times, *Taylor v. State*, (1982) Ind., 438 N.E.2d 294; and the weapon need not be displayed to establish the threat of deadly force. *Ross v. State*, (1982) Ind., 429 N.E.2d 942.

■ Here, the screw-driver type object held by defendant could have been used in a manner which would cause serious bodily injury since it could obviously have been used to poke out the victim's eyes or could have been jabbed into her in a fatal manner. The record shows that defendant used the object in a threatening manner and also made verbal threats. This was

sufficient evidence to support the jury's conclusion that defendant used a "deadly weapon" in the commission of the rape, as was required to elevate the offense to a Class A felony.

The record further shows that the locks on the French doors in the victim's apartment had been broken. One lock had been pulled out with the screws and the other lock had been broken in half. The victim testified that she had checked the locks that evening prior to going to bed and they were securely fastened. This was sufficient evidence to support the jury's finding that defendant did "break into" the victim's apartment as charged within the burglary count. A breaking is proved by showing that even a slight force was used to gain unauthorized entry. *Howard v. State*, (1982) Ind., 433 N.E.2d 753; *Willard v. State*, (1980) 272 Ind. 589, 400 N.E.2d 151. This evidence was sufficient to prove the use of a deadly weapon and of breaking into the victim's apartment.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.