**Philip R. LINTHICUM, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 585S188.

Supreme Court of Indiana.

Aug. 20, 1987.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Philip R. Linthicum initially pled guilty to the robbery of an IGA store. He was sentenced to an enhanced term of twenty years. He later sought post-conviction relief, alleging that his plea had not been voluntary and intelligent. The trial court denied his petition, but this Court reversed and remanded the action with instructions to allow Linthicum to withdraw his former plea. *Linthicum v. State* (1984), Ind., 465 N.E.2d 701. The State then filed a habitual offender charge against Linthicum. After a trial Linthicum was convicted of robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1985 Repl.), and found to be a habitual offender. He was sentenced to an enhanced term of twenty years for the robbery and thirty years were added for the habitual offender finding.

Linthicum raises five issues on direct appeal of his conviction.

1) Whether the trial court erred when it denied a motion to dismiss the habitual offender charge and imposed a longer sentence after post-conviction relief had been granted;

2) Whether the trial court properly admitted identification evidence that resulted from a one-man show up;

3) Whether the defendant's statement to police was voluntarily given;

4) Whether the trial court erred in refusing to give an instruction on the defense of intoxication; and

5) Whether the trial court correctly denied a change of venue.

At trial the evidence showed that late on August 26, 1981, Linthicum, Ralph Holiday, and Edward Kays stopped at a bar in Indianapolis. They stayed for about an hour and a half and shared one pitcher of beer. The men decided to travel down to Bedford because Kays knew a woman there and Holiday had a daughter there. On the way to Bedford, the men realized they were running out of money. They began to discuss plans for robbing a store and decided on the IGA in Bedford. Once at the store, Linthicum got out of the car and walked around the building. He returned to the car reporting that some people were inside. A moment later, he left again.

In the early morning hours of August 27, 1981, night cashier Joy Hatfield saw a man walk past the front window of the IGA without entering. Some time later she saw the same man walk into the store. He walked around the store once and then came forward to the counter. Hatfield conversed with the man for about five minutes. The man lifted his shirt and showed her a gun. He said he was going to count to five. Hatfield opened the register and handed him the twenty dollar bills. The man impatiently grabbed the rest of the money and fled.

Holiday testified that when Linthicum returned to the car a second time, he was carrying cash. They split a portion of the money and headed for the Hideaway Bar.

Hatfield reported the robbery to the police. She described the robber as a white male, between 5'9" and 5'10", with dark hair and a scar on the right side of his face.

She further stated the man was wearing an orange T-shirt at the time of the robbery. Detective Robinson of the Bedford Police Department split up his men to survey the bars in Bedford. Later Robinson saw Linthicum at the Hideaway Bar; Linthicum matched Hatfield's description. Robinson identified himself, advised Linthicum of the robbery, and asked him to accompany him back to the store. Linthicum agreed.

Back at the store, Hatfield identified Linthicum as the robber. Robinson then arrested Linthicum. At the police station Linthicum waived his rights and talked with Robinson about the robbery.

### I. Imposition of a Greater Sentence After Post-Conviction Relief

Linthicum argues the trial court erred by denying a motion to dismiss the habitual offender charge and by subsequently adding thirty years to his twenty-year robbery sentence. He contends that Rule PC 1, § 10, Ind. Rules of Procedure for Post-Conviction Remedies, bars the assessment of a greater sentence after a successful post-conviction action. In light of the timing of this case, we agree.

■ On April 1, 1982, when Linthicum filed for post-conviction relief, Rule PC 1, § 10, read:

(a) If prosecution is initiated against a petitioner who has successfully sought relief under this Rule and a conviction is subsequently obtained, or

(b) If a sentence has been set aside pursuant to this Rule and the successful petitioner is to be resentenced,

then the sentencing court shall not impose a more severe penalty than that originally imposed....[1]

---

1. Section 10 was later amended to allow a court to impose a more severe sentence when "the court includes in the record of the sentencing hearing a statement of the court's reasons for selecting the sentence that it imposes which includes reliance upon identifiable conduct on the part of the petitioner that occurred after the imposition of the original sentence...." *See generally, North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656, 670 (1969) (whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for doing so must affirmatively appear). A whole subsection, subsection (c), was added to address the applicability of the section to plea agreements. *See generally, Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604, 611 (1978) (in the "give-and-take" of plea bargaining, there is no element of retaliation). These amendments only apply to petitions filed after January 1, 1986. *Tolson v. State* (1986), Ind., 493 N.E.2d 454.

This section protects important due process rights. A person convicted of an offense is entitled to pursue post-conviction remedies "without apprehension that the State will retaliate by ... subjecting him to a significantly increased potential period of incarceration." *Blackledge v. Perry,* 417 U.S. 21, 28, 94 S.Ct. 2098, 2102–2103, 40 L.Ed.2d 628, 634–635 (1974). In this case, as in *Perry,* there is no evidence that the prosecutor acted maliciously or in bad faith. This Court's objective, however, has been the removal of impediments which may deter a person from appealing a conviction:

> The intent of Section 10 is to assure that the avenue provided by the sections of the rule preceding it may be freely traversed. This does not come to pass if the would-be petitioner, in order to utilize the rule, must pay the toll of risking a penalty more severe than the one he is presently under.

*Ballard v. State* (1974), 262 Ind. 482, 501, 318 N.E.2d 798, 810. The imposition of a greater sentence following post-conviction relief implicates due process even in the absence of prosecutorial abuse.

After Linthicum filed for post-conviction relief but before this Court granted his petition, the legislature adopted Ind.Code § 35–50–1–5 (Burns 1985 Repl.), which provides:

> If:
> (1) Prosecution is initiated against a petitioner who has successfully sought relief under any proceeding for post-conviction remedy and a conviction is subsequently obtained; or
> (2) A sentence has been set aside under a post-conviction remedy and the successful petitioner is to be resentenced;
> the sentencing court may impose a more severe penalty than that originally imposed.

1984 Ind. Acts, P.L. 179, § 3 (effective February 29, 1984). Linthicum urges that we declare this statute unconstitutional as a violation of due process.

To its credit, the State acknowledges that Rule PC 1, § 10(a), barred imposition on remand of a sentence higher than Linthi-cum originally received. We see no need to rule on the constitutionality of Ind.Code § 35–50–1–5 because the recent amendments to Rule PC 1, § 10, make the two consistent. The statute provides that a sentencing court "may impose a more severe penalty than that originally imposed" and the Rule outlines the procedural conditions under which that may be done.

█ Because Rule PC 1, § 10, barred a greater sentence, we vacate the the habitual offender finding and remand to the trial court for correction of sentence.

## II. *Impermissibly Suggestive Identification*

Linthicum claims his identification as the robber was impermissibly suggestive in violation of due process. The procedure was unduly suggestive, he argues, because no exigent circumstances warranted the one-person show up. Linthicum suggests that a photographic array or a lineup should have been used.

█ While an array or a lineup may be less suggestive, not every one-person show up violates due process. We have permitted confrontations between eyewitnesses and suspects shortly after the commission of a crime because "it is valuable to have witnesses view a suspect while the image of the offender is fresh in their minds." *Lamb v. State* (1984), Ind., 462 N.E.2d 1025, 1027. To determine whether a particular identification is impermissibly suggestive, we consider if there is a substantial likelihood of misidentification in light of all the circumstances. *Hamlet v. State* (1986), Ind., 490 N.E.2d 715, 720.

█ The likelihood of misidentification in Linthicum's case is infinitesimal. Night cashier Hatfield saw the robber "case" the store before entering, she saw him walk around inside the store, and she talked to him for five minutes before he committed the robbery. When Detective Robinson and Linthicum entered the store later, Hatfield exclaimed "That's him!" She refused to walk any closer to the door to identify Linthicum. Detective Robinson noted by

the expression on Hatfield's face that she recognized Linthicum.

The only evidence of suggestiveness was a statement made by Linthicum at the suppression hearing. He claimed that Detective Robinson said, "And this is him, isn't it?" or "Isn't this him?" to Hatfield before she could identify Linthicum. Both Robinson and Hatfield denied that the detective had an opportunity to speak before her own exclamation. Other than his self-serving statement, Linthicum presents no evidence to indicate that the identification was tainted.

The one-person show up after the crime was not a due process violation, and the trial court did not err when it allowed Hatfield's identification of Linthicum.

### III. *Voluntariness of Statement*

Linthicum argues that the trial court should have suppressed the statement he made to the police. He was unable to understand his rights and did not voluntarily make the statement because he was intoxicated and under the influence of drugs at the time, he contends. Accordingly, he argues, the Fifth and Fourteenth Amendments to the U.S. Constitution require exclusion of his statement.

Linthicum's argument does not address the main concern of due process analysis in this area: coercive police conduct. "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connelly*, —— U.S. ——, ——, 107 S.Ct. 515, 520, 93 L.Ed.2d 473, 482 (1986). In *Connelly* the Court held that the Fifth Amendment, applied to the states by virtue of the Fourteenth Amendment, did not bar the admission of a confession given by a suspect who claimed a mental illness compelled him to waive his rights and make a statement. The Court rejected Connelly's assertion that the United States Constitution renders invalid a waiver of rights arising from any compulsion:

> Only if we were to establish a brand new constitutional right—the right of a criminal defendant to confess to his crime only when totally rational and properly motivated—could respondent's present claim be sustained.... We hold that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment.

—— U.S. at ——, 107 S.Ct. at 521–22, 93 L.Ed.2d at 484.

■ The federal constitution requires that the State establish by a preponderance of the evidence a defendant's voluntary confession. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). Detective Robinson did not notice any odor of alcohol on Linthicum's breath. He testified that Linthicum "walked alright" at the police station and appeared to understand what was being said to him. Linthicum did not slur his speech when he answered questions.

■ The evidence at the suppression hearing showed that Linthicum consumed a pitcher of beer in Indianapolis with two other men, experimented with psychedelic mushrooms on the way to Bedford, and drank some mixed drinks at the Hideaway Bar after leaving the store. Although Linthicum had ingested drugs and alcohol, the police did not act improperly by taking the statement from him. Absent evidence of oppressive police conduct, the Fifth Amendment does not require suppression of Linthicum's statement.

### IV. *Intoxication Instruction*

Linthicum argues that the trial court erred in refusing to give an instruction on intoxication. The proposed instruction read in part, "If intoxication ... renders the person such that he has no ability to form the intent then ... he cannot be held accountable for his actions...."

■ We use a three-part analysis to review the denial of a tendered instruction. First, the tendered instruction must correctly state the law. Second, it must be supported by evidence. Third, it must not be covered by other instructions. *Pavey v. State* (1986), Ind., 498 N.E.2d 1195, 1195–

1196. Linthicum has not met the second part of the test.

■ The record does not support the giving of the instruction. At trial Holiday testified that Linthicum shared one pitcher of beer with Kays and him in Indianapolis before the three men left for Bedford. No other evidence supports the intoxication instruction. The number of drinks Linthicum consumed at the Hideaway Bar after the robbery is irrelevant to Linthicum's *mens rea* at the time of the crime. A third of a pitcher of beer consumed more than an hour before the robbery is insufficient to warrant giving an instruction on intoxication.

### V. *Change of Venue*

Linthicum alleges that news reports of his arrest and guilty plea were so widely circulated as to deny him an opportunity for a fair trial. The trial court denied his motion for a change of venue.

■ The denial of a motion for change of venue rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Lindsey v. State* (1985), Ind., 485 N.E.2d 71, 72. The test to determine if pretrial publicity warrants a change of venue hinges on the fairness of trial. The defendant must produce evidence of community prejudice sufficient to convince the trial court that he could not obtain a fair trial in that county. *Slone v. State* (1986), Ind., 496 N.E.2d 401, 404. The trial court reviewed evidence of newspaper articles and radio spots, and concluded otherwise. Neither the newspaper articles nor a transcript of the radio spots that allegedly caused the prejudice are included in the record. We have no way of knowing if the news reports caused prejudice.

■ In any event, the voir dire examination of potential jurors, three years after the dissemination of the news, indicated no prejudice arising from pretrial publicity. The trial judge did not abuse his authority by denying the change of venue.

The habitual offender finding is vacated and remanded to the trial court for a correction of sentence. In all other respects, the trial court is affirmed.

GIVAN, PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs in result with opinion.

DeBRULER, Justice, concurring in result.

The reliance in the majority opinion upon the new case of *Colorado v. Connelly,* —— U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473, (1986), warrants a special statement.

Connelly first confessed and made a waiver of counsel and the privilege against self-incrimination before being taken into custody. He let the cat out of the bag. After being taken into custody, he again confessed. The Supreme Court of the United States was presented with the question of whether the pre-custodial confession had been correctly determined inadmissible due to constitutional involuntariness. It determined that the state court had applied an erroneous federal constitutional standard when it concluded that while the pre-custodial confession had not been brought about by police coercion, it was nonetheless inadmissible as involuntary because Connelly made the confession in obedience to a command he heard during a psychotic episode, and could not therefore be deemed voluntary as the product of a rational intellect and a free will. The Supreme Court held that elements of police coercion must mingle with other relevant considerations in any determination of such federal constitutional involuntariness.

In the case at bar by contrast, the statement in question was given in a police interrogation in the station house at 5:00 a.m., after appellant's arrest at about 3:00 a.m. This statement is a post-custodial one. The questioning by trained police interrogators had as its purpose the wresting of self-incriminatory statements from a person who is locked up. The setting contains inherently compelling pressures which undermine the will to resist and compel a person to speak against their better judgment. The pressures are so great that

there is a right to a lawyer at such an interrogation.

Here, he had not slept, and there is no doubt that he was to some degree under the influence of alcohol. In my opinion, the interrogation of appellant at this place and time, and under these circumstances satisfies the requirement of *Connelly* that an element of official coercion be present and operating upon an arrestee when the choice is made to confess or to waive basic rights.

It is also appropriate at this initial visitation with *Connelly* to express the opinion that the case does not bind this court in applying the protections of the Indiana Constitution, applicable in the police interrogation area. The constitutional test of voluntariness under the Indiana Constitution requires a confession be freely self-determined and the product of a rational intellect and a free will. *Robbins v. State* (1968), 250 Ind. 219, 235 N.E.2d 199. Even in the absence of coercion on the part of the interrogating officers, a confession may be involuntary where for example the accused's will, by reason of borderline feeblemindedness, was easily overborne by experienced interrogating officers. *Robbins, id.*

Here the trial court heard evidence which it was warranted in crediting, from which it could reasonably be determined *beyond a reasonable doubt* that appellant's decision to confess and to waive was voluntary in the constitutional sense. I therefore concur in upholding the conviction.