William F. HURT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–9705–CR–161.

Court of Appeals of Indiana.

May 29, 1998.

Transfer Denied July 8, 1998.

---

John D. Clouse, John P. Brinson, Evansville, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Randi E. Froug, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

BAKER, Judge.

Appellant-defendant William F. Hurt appeals his conviction for Voluntary Manslaughter,[1] a Class B felony. Specifically, he

1.  IND. CODE § 35–42–1–3.

contends that the incriminating statements he made, while involuntarily committed at the Evansville State Hospital, were released in violation of federal statute and erroneously admitted at trial.

## FACTS

On June 19, 1982, Hurt was walking the streets and looking into cars in order to find his wife. After Hurt peered into a station wagon belonging to Wayne Hilgeman, Wayne and his friend, Walter Axley, approached Hurt. Hurt then shot Axley three times in the chest and abdomen. After Axley was transported to the hospital emergency room, he died of complications stemming from the gunshot wounds.

Although Hurt was not charged with Axley's death, he was incarcerated in the Indiana Department of Correction for an unrelated offense from approximately 1982 to 1994. Immediately after his release, the authorities petitioned the LaPorte Circuit Court for an order committing Hurt to the Indiana Department of Mental Health. Thereafter, Hurt was found to be mentally disabled and involuntarily committed to the Department of Mental Health Logansport Hospital. On March 3, 1994, Hurt was transferred to the Evansville State Hospital where he was diagnosed with paranoid schizophrenia, antisocial personality disorder and alcohol dependence abuse in remission. Record at 330. During his stay at the hospital, Hurt stayed on the locked ward and was treated with antipsychotic medications, including Prolixin, Respirdal and Klonopin, and an antianxiety medication, Atarax.

On the evening of February 27, 1996, and nearly fourteen years after the shooting, Hurt approached qualified medicine aid Carol Motisi and informed her that he wished to speak to an officer. After Motisi informed Hurt that only hospital personnel were present on the hospital grounds, Hurt confessed to the Axley homicide. R. at 580. As a result, Motisi contacted her supervising nurse, Julia Thomas, who contacted hospital security.

Thereafter, hospital security officer Hugh Nicholas went to Hurt's room and escorted him to the sun room where Hurt, in the presence of Nicholas and Thomas, again confessed to killing Axley. R. at 589, 593. Nicholas then revealed Hurt's story to his supervisor, Don Tharp, who conveyed the information to the hospital's liaison to the Indiana State Police. Tharp then arranged for an officer of the Evansville Police Department to interview Hurt on March 1, 1996.

At approximately 10:25 a.m. that day, Hurt complained that he felt anxious. As a result, the nurse gave him 25mg of Atarax. Later that afternoon, at approximately 3:00 p.m., Detective Chapman and Officer Joyce Molinet of the Evansville Police Department, Trooper Gary Gilbert of the Indiana State Police and Tharp arrived to interview Hurt. Before Hurt made a statement, he was given his Miranda rights and was presented with a waiver of rights form which he signed. Thereafter, Hurt answered several questions and confessed to killing Axley. Hurt's statement was taped and later transcribed.

On May 6, 1996, Hurt was charged with Axley's murder.[2] Four days later, Hurt was transported from the hospital to the jail. On March 16, 1996, Hurt filed a request for a competency examination and notice of intent to rely on the insanity defense. Thereafter, the trial court determined that Hurt was competent to stand trial.

Prior to trial, on November 15, 1996, Hurt filed a motion to suppress all of the statements he had made to agents of the State. On December 30, 1996, Hurt filed a notice to withdraw the waiver of his constitutional rights. Following an evidentiary hearing on January 10, 1997, the trial court denied the motion to suppress. Thereafter, on January 29, 1997, Hurt withdrew his notice of intent to rely on the insanity defense.

A jury trial was held on February 3, 1997. At the beginning of trial, Hurt filed a motion to dismiss the charges against him, arguing that the State failed to obtain a court order prior to obtaining his statements in violation of federal statute. The trial court, however, denied his motion. During trial, the statements which Hurt made to Motisi, Nicholas and the police were admitted into evidence over his objection. Following the trial, Hurt

**2.** IND. CODE § 35–42–1–1.

was convicted of the lesser included offense of Voluntary Manslaughter, a Class B felony. Hurt now appeals.

## DISCUSSION AND DECISION

### I. Federal Statute and Regulation

■ Hurt contends that the trial court erroneously denied his motion to dismiss the charges against him because the statements he made to medical assistant Motisi, nurse Thomas and security guard Nicholas were released from the hospital in violation of federal statute and regulation. Specifically, he contends that, because he had been diagnosed with and treated for alcoholism in remission and the State received federal funding for operating its alcohol program, the hospital was required to obtain a court order prior to releasing his incriminating statements to the Indiana State Police for purposes of conducting a criminal investigation.

42 U.S.C. § 290dd–2 provides, in relevant part, as follows:

(a) Requirement. Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided by subsection (e), be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

(b) Permitted disclosure . . .

(2) Method for disclosure.

Whether or not the patient, with respect to whom any given record referred to in subsection (a) of this section is maintained, gives written consent, the content of such record may be disclosed as follows: . . . .

(C) If authorized by an appropriate court order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm.

(c) Use of records in criminal proceedings.

Except as authorized by a court order granted under subsection (b)(2)(C) of this section, no record referred to in subsection (a) of this section may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient.

Further, 42 C.F.R. § 2.13 provides as follows:

(a) General. The patient records to which these regulations apply may be disclosed or used only as permitted by these regulations and may not otherwise be disclosed or used in any civil, criminal, administrative, or legislative proceedings conducted by any Federal, State, or local authority. Any disclosure must be limited to the information which is necessary to carry out the purpose of the disclosure.

The State concedes that, if Hurt had been actively receiving treatment for alcoholism, the hospital would have been required to obtain a court order prior to releasing his statements. The State further concedes that, had the hospital obtained his statements in violation of the statute, any subsequent statements which Hurt made would have been inadmissible as fruit of the poisonous tree. However, the State contends that the statute does not apply to Hurt's statements because they were not maintained "in connection" with the performance of any activity relating to substance abuse. Thus, the State argues the hospital was not required to obtain a court order prior to releasing Hurt's statements.

The plain language of the statute requires a party to obtain a court order only for records "maintained *in connection with* the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation or research." 42 U.S.C. § 290dd–2(a) (emphasis added). The commentary on this code section, which is contained in the code of federal regulations, provides guidance in interpreting the statute. Specifically, it states that these "regulations impose restrictions upon the disclosure and use of alcohol and drug abuse patient records which are maintained in connection with the performance of any federally assisted alcohol and drug abuse program."

42 C.F.R. § 2.3. Further, 42 C.F.R. § 2.12(e) provides that "[t]hese regulations cover any information ... about alcohol and drug abuse patients obtained by a program (as the terms "patient" and "program" are defined in § 2.11) if the program is federally assisted in any manner described in § 2.12(b)."[3] A "program" includes any "identified unit within a general medical facility which holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment" or "medical personnel or other staff in a general medical care facility whose primary function is the provision of alcohol or drug abuse diagnosis, treatment or referral for treatment and who are identified as such providers." 42 C.F.R. § 2.11. More specifically, § 2.12(e)(3) provides that the "restriction on use of information to bring criminal charges against a patient for a crime applies to any information *obtained by the program for the purpose of diagnosis, treatment, or referral for treatment of alcohol or drug abuse.*" (emphasis added). Thus, based on the plain language of the statute and this commentary, Hurt's statements qualified as confidential statements under the statute only if they were obtained by an alcohol program which provided alcohol diagnosis and treatment or referral for alcohol treatment. We now turn to the facts of this case.

The record reveals that during trial, the Superintendent of the Evansville State Hospital, Ralph Nichols, testified that the hospital was a facility for the treatment of the mentally ill. Although Nichols further testified that the hospital had a program for alcohol and drug abuse, he noted that it was separate from the programs for general psychiatric treatment and was not available to every patient. R. at 742, 751-2. Nichols

further testified that, even if a patient were diagnosed as an alcoholic, he would not necessarily receive treatment if he were in remission. R. at 748.

On appeal, Hurt has not demonstrated that he presented any evidence to the trial court which would have shown that he was being treated for alcoholism or otherwise enrolled in an alcohol program when he made the incriminating statements. Although his periodic evaluations indicate that he had a history of alcohol abuse, this evidence is not sufficient to show that he was enrolled in an alcohol program or activity. Additionally, there is no evidence to demonstrate the Hurt made the statements for the purpose of diagnosis or treatment. Although Hurt contends that he was encouraged to confess to a homicide as part of his treatment program, his intake evaluation report indicates only that he was encouraged to accept responsibility for his past activities and encouraged to make restitution to his victims. We cannot conclude that this requirement compelled Hurt to confess to killing Axley as part of his treatment. Furthermore, his intake report indicated that, in addition to alcoholism, Hurt suffered from schizophrenia and antisocial personality disorder. Thus, we are unable to determine whether the recommendation to accept responsibility for his actions was directly related to his treatment for alcohol abuse. Therefore, because there is no evidence that Hurt's confession was maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation or research, the hospital was not required to obtain a court order prior to releasing Hurt's statements to the

---

3. We note, and none of the parties dispute, that the Evansville Hospital qualified as a federally funded institution because it received approximately $60,000 per year in federal funds. R. at 744. According to 42 C.F.R. § 2.12(b), an alcohol abuse or drug abuse program is considered to be federally funded if it meets any of the following requirements: 1) it is conducted in whole or part by any department or agency of the Untied States; 2) it is being carried out under a license, certification, registration, or other authorization granted by a department or agency of the United States; 3) it is supported by funds provided by any department or agency of

the United States by being a recipient of federal financial assistance in any form, including financial assistance which does not directly pay for the alcohol or drug abuse diagnosis, treatment, or referral activities; or conducted by a state or local government unit which, through general or special revenue sharing or other forms of assistance, receiving federal funds which could be, but are not necessarily spent for alcohol or drug abuse programs; or 4) is assisted by the Internal Revenue Service of the Department of the Treasury through the allowance of income tax deductions for contributions to the program or through the granting of tax exempt status to the program.

police. As a result, the trial court properly denied his motion to dismiss.

## II. Admission of Hurt's Statements

Next, Hurt contends that the trial court erroneously admitted into evidence the statements he made to Motisi, Nicholas and the Evansville Police Officers. In support of his contention, Hurt makes the following arguments: 1) he was not given his Miranda warnings before he made a statement to the hospital's security guard Nicholas; 2) his waiver of Miranda rights and subsequent confession were not voluntary; and 3) even if he waived his rights, he subsequently withdrew that waiver pursuant to IND. CODE § 12–27–2–1 which vitiated any prior statements.

### A. Custodial Interrogation

First Hurt contends that security guard Nicholas was required, but failed, to give him Miranda warnings before he confessed to killing Axley. Specifically, Hurt contends that he was subject to custodial interrogation because he was under suspicion for Axley's death due to the statements he made to Motisi, was confined to a locked ward and was not free to leave the sun room in which he made the confession.

A defendant is entitled to receive Miranda warnings if he is subject to custodial interrogation. *Cliver v. State*, 666 N.E.2d 59, 66 (Ind.1996). A defendant is in custody if he is formally arrested or is subjected to restraints on his freedom such that a reasonable person in defendant's position would believe he is not free to leave. *Pasco v. State*, 563 N.E.2d 587, 593 (Ind.1990). Neither party contends that Hurt had been formally arrested when he made the statement to Nicholas. Thus, we must determine whether he was deprived of his freedom in a significant way.

Here, the record reveals that Nicholas went to meet with Hurt only after Hurt approached Motisi and requested to speak to the police. After Nicholas met with Hurt in the sun room and asked him if he had something to say, Hurt confessed to the killing. At no time was Hurt physically restrained or detained in the sun room by Nicholas. Additionally, there is nothing in the record to indicate that Hurt was not free to terminate the meeting or leave the room at any time. Although Hurt had been involuntarily committed to a state mental hospital and may have been confined to a locked ward, these factors alone do not demonstrate that he was "in custody" for the purpose of requiring Miranda warnings. As a result, we cannot conclude that Hurt was in custody when he confessed to the homicide. Therefore, Hurt was not entitled to Miranda warnings. *See Schiro v. State*, 451 N.E.2d 1047, 1061 (Ind. 1983) (defendant was not entitled to Miranda warnings when defendant spoke to director of halfway house about crime only upon his request, defendant was not object of suspicion and, although defendant was not free to leave facility unless he signed out, he was free to move about the facility), *cert. denied*, 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699.[4]

### B. Voluntary Waiver and Confession

Next Hurt contends that the State failed to show that his waiver of Miranda rights and subsequent confession were voluntary. Specifically, he contends that, because he was diagnosed as a schizophrenic, had been judicially determined to be mentally disabled upon being admitted to the hospital, was required to ingest drugs and told to confess as part of his treatment,[5] his waiver and confession were not the product of a rational intellect and free will.

When a defendant challenges the voluntariness of a confession and waiver under the federal constitution, the State is required to show by a preponderance of the evidence that the confession and waiver were voluntary. *Smith v. State*, 689 N.E.2d 1238, 1246 (Ind.1997). Based on the totality of the circumstances, the trial court must determine whether the defendant's statements were ob-

4. Hurt also contends that he should have received Miranda warnings before he gave a statement to Detective Chapman on March 1, 1996. However, the record clearly reveals that Hurt had been read his Miranda warnings before he made a statement on that date. Therefore, we find no error.

5. Specifically, Hurt relies on a March 9, 1994 admission evaluation which indicated that Hurt's treatment recommendation included "encouraging the patient to accept responsibility for his past activities and encouraging him to make any retribution [sic] possible to the victims." R. at 330.

tained through violence, threats, promises or other improper influences. *Page v. State*, 689 N.E.2d 707, 710 (Ind.1997). The voluntariness of a defendant's waiver is also based on the totality of the circumstances. *Allen v. State*, 686 N.E.2d 760, 770 (Ind.1997). Although a signed waiver is evidence of a voluntary waiver, the State, when challenged, may be required to show additional evidence to show the voluntariness of the waiver. *Id.* Neither the influence of drugs nor severe mental problems is sufficient to require the exclusion of a statement. *Brewer v. State*, 646 N.E.2d 1382, 1385 (Ind.1995). Rather, they are merely factors to consider in evaluating the totality of the circumstances. *Id.* On appeal, we do not reweigh the evidence, but determine if there is substantial evidence of probative value to support the trial court's determination. *Carter v. State*, 686 N.E.2d 1254, 1258 (Ind.1997).

Here, the record reveals that before Hurt made his statement on March 1, 1996, he was read his Miranda rights and went through the waiver form with Detective Chapman. R. at 69. Hurt consented to the waiver of his rights and signed a waiver of rights form. R. at 69, 108. Hurt then proceeded to answer questions regarding the Axley homicide, appearing lucid and coherent throughout the interview and responding promptly with clear, specific factual answers. R. at 96, 110–11, 114, 389–90, 396–97. Although Hurt was mentally ill and ingested drugs as part of his therapy, these factors were to be considered by the trial court based on the totality of the circumstances. In light of these circumstances, we conclude that the trial court properly found that Hurt's confession and waiver were voluntary.

Nevertheless, Hurt argues that the State also was required to show that his confession was voluntary under the Indiana Constitution which, he alleges, requires a confession to be the product of a "free will and rational intellect." In support of his contention,

Hurt relies on Justice DeBruler's concurring opinion in *Linthicum v. State*, 511 N.E.2d 1026, 1031 (Ind.1987), in which Justice DeBruler noted that the Indiana Constitution, unlike the federal constitution, does not require proof of police coercion to render a defendant's confession involuntary. In particular, he noted that the proper standard to be used when determining the voluntariness of a confession under the Indiana Constitution is whether the confession was "freely self-determined and the product of a rational intellect and a free will." *Id.* at 1032. He further found that even in the "absence of coercion on the part of the interrogating officers, a confession may be involuntary where for example the accused's will, by reason of borderline feeblemindedness, was easily overborne by experienced interrogating officers." *Id.* Justice DeBruler then concluded that the evidence presented by the State proved beyond a reasonable doubt that the statement was voluntary. Based on Justice DeBruler's pronouncement, Hurt contends that the State was required to show, beyond a reasonable doubt, that his confession was the product of a free will and rational intellect.

However, even applying the standard and burden of proof which Hurt proposes, the result does not change. Our review of the record, and in particular Hurt's statement made on March 1, 1996, does not reveal that his free will and rational intellect were overborne by his mental disease or the drugs which he ingested as part of his treatment. Rather, the record reveals that Hurt understood the officer's questions and easily recalled specific facts relating to the Axley killing. Further, it appeared that his desire to confess was motivated by his need to clear his conscience. R. at 71. As a result, we conclude that under either the federal or state constitution, the State met its burden of proof by showing that Hurt's confession was voluntary.[6]

---

**6.** Hurt also appears to argue that the trial court improperly interpreted and applied the United States Supreme Court's decision in *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) by failing to consider whether his confession was "freely self-determined and was [sic] the product of a rational intellect." Appellant's Brief at 34. However, recently our supreme court, citing the *Connelly* case, stated

that, when a defendant challenges the voluntariness of a confession under the United States Constitution, the State must prove that the statement was voluntarily given by the defendant. *See Smith v. State*, 689 N.E.2d 1238, 1246 n.11 (Ind.1997). Further, we have reviewed the trial court's conclusions and find no error in the court's analysis.

### C. Withdrawal of Waiver

█ Finally, Hurt contends that the statements he made to the Evansville Police Officers on March 1, 1996, should have been suppressed because he properly withdrew his waiver of rights on December 30, 1996. Specifically, Hurt contends that IND. CODE § 12–27–7–2, which permits mentally ill patients to withdraw a prior waiver of certain rights, expressly permitted him, as an inpatient at a state institution, to withdraw his waiver. We disagree.

The record reveals that on March 1, 1996, Hurt waived his Miranda rights and immediately thereafter confessed to the Axley killing. However, he did not withdraw his waiver until almost nine months later on December 30, 1996. Even assuming I.C. § 12–27–7–2 permits a defendant to withdraw a prior waiver of constitutional rights, we cannot conclude that this section entitles a defendant to withdraw a statement which was made before his waiver of rights was withdrawn. Rather, to the extent that this section permits a withdrawal of a prior waiver, we conclude that it would apply only prospectively. Thus, Hurt's withdrawal of waiver made on December 30, 1996, did not operate retroactively to invalidate his confession made on March 1, 1996.[7] The trial court properly admitted Hurt's confession into evidence.[8]

Judgment affirmed.

NAJAM, J., concurs.

RILEY, J., dissents with opinion.

RILEY, Judge, dissenting.

I respectfully dissent. The statements that Hurt made while involuntarily committed to the Evansville State Hospital were released in violation of federal statutes and were erroneously admitted at trial.

On March 3, 1994, Hurt was transferred to Evansville State Hospital. The admission planning report included the following treatment recommendations:

1. Maintaining the patient within the hospital so his behavior can be observed and controlled.

2. Encouraging the patient to accept responsibility for his past activities and encouraging him to make any [restitution] possible to the victims.

(R. 330).

On June 2, 1994, Ralph H. Nichols, a member of Hurt's treatment team, reported that the treatment modalities to be employed included a "Rehab Program" which, based on Hurt's diagnosis, could only mean an alcohol rehabilitation program. It was also the impression of the treating hospital that while Hurt was on medication and "not involved in alcohol" that Hurt represented no dangerous behaviors to himself or others. Further, it was reported that, given Hurt's history of alcohol problems and limited awareness for need of medication alternatives, placement outside the hospital seemed "less likely." (R. 331).

It seems clear to me that because the Logansport State Hospital had diagnosed Hurt as an alcoholic in 1982 and he had a limited awareness of his need for medication, the method in which Evansville State Hospital intended to treat his alcohol abuse was to "maintain the patient within the hospital." This recommendation, however limited, is a treatment for his alcohol-related behavior.

The second recommendation made by the hospital is one of the cardinal tenets of treatment under the Alcoholics Anonymous program. When discharged from Logansport State Hospital in 1983, part of Hurt's discharge planning included attendance at A.A. meetings and continuance of lithium.

Although the court found that Hurt's primary admission or commitment was for paranoid schizophrenia, his history of alcohol

---

7. Hurt also argues that he was permitted to withdraw his waiver of rights in order to suppress a statement he made to Nicholas. However, we have already concluded that Hurt was not in custody when he made this statement. Therefore, Miranda warnings were not required and, as a result, there could not have been a waiver of rights.

8. Finally, Hurt contends that the erroneous admission of his confessions was not harmless error. However, having already concluded that his statements were properly admitted into evidence, we need not address his contention.

abuse and the initial diagnosis of alcoholism is the primary reason for his inpatient status. If he were not an alcoholic, his treatment options may have included an open unit or even placement outside the hospital with monitoring of medication. (R. 755).

It is obvious to me that the hospital maintained Hurt's records *"in connection* with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation or research." 42 U.S.C. § 290dd–2(a). His hospitalization prevented him from abusing alcohol and his treatment included that he "accept responsibility for his past activities," which is consistent with treatment for alcoholism. In addition, on June 24, 1994, a Treatment Plan Summary was written that included a "rehab program" as one of the treatment modalities to be employed. (R. 332).