**Odie MILLER, Jr., Appellant**
**(Defendant Below)**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 1184S471.

Supreme Court of Indiana.

Nov. 24, 1986.

Rick L. Jancha, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Odie Miller was convicted of robbery while armed with a deadly weapon, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.). The trial court imposed a prison term of thirteen years.

Appellant raises three issues in this direct appeal:

(1) Whether evidence of a third party's extrajudicial statement identifying the perpetrator by name constituted inadmissible hearsay;

(2) Whether evidence identifing him as the perpetrator is sufficient, and

(3) Whether a screwdriver constitutes a "deadly weapon" for purposes of the robbery statute.

These are the facts which tend to support the trial court's judgment. On December 24, 1983, a man entered a convenience store at 1:30 p.m. and remained there until 5:20 that evening, claiming that he was waiting for a cab. During the course of the afternoon, he was usually stationed at the front door, looking outside. At one point, he walked to the rear of the store and perused the automobile section of the magazine rack. At 5:20, he went behind the counter to the cash registers and attempted to pry open one of the registers with a screwdriver. When the cash register would not open, he demanded that the cashier, Lee Ann Zielinski, open the other register. After Zielinski opened the cash register, the man took thirty dollars in cash and fled the store.

A few days later, Zielinski identified appellant's picture from a photographic array. She also identified him in court at trial. Latent fingerprints lifted from the cover of a *Hot Rod* magazine, which had been offered for sale at the store, matched defendant's fingerprint impressions taken prior to trial.

## I. Hearsay: Adoptive Admission

Two hours before the robbery, Zielinski and store manager Rosemary Freeman observed the perpetrator speak with an unidentified man who referred to the perpetrator by name. Miller argues that the witnesses' testimony about this conversation constituted hearsay. He maintains that the trial court erroneously permitted this testimony as an adoptive admission.

■ Zielinski testified during direct examination:

Q. Lee Ann, Do you know the first name of the person who did this to you?

A. Yes.

Q. What is that?

A. Odie.

Q. How is it that you know that?

A. A customer had come into the store and said, 'What's happening, Odie?"

Q. Who was that statement made towards?

A. Towards the black male that was in the store at the time.

Q. And that's the person you have identified in court here?

A. Yes.

Q. What happened after that statement was made?

A. He looked at him and said, "Hey," and kind of waved.

Rosemary Freeman also recounted a conversation she overheard between the robber and the unidentified third party:

Q. While this person was there, did anybody else come into the store and have conversations with this person?

A. One of the kids.

Q. Go ahead.

A. One of the kids that did come in the store quite often and did come in and say something to the young man that was in the store.

Q. What did the person say?

A. All I heard him say was, "Hi, Odie, how you doing?"

Q. In response to that statement, what did this individual do who had been in the store for a period of time?

A. He was standing there talking to the boy. At the time I was waiting on some customers, so I didn't hear anything more. He was over standing by the magazine rack talking to him. And when he got ready to leave, I did hear him say something about, "Well, I'll see you around. Maybe you can come by and we'll play some music or something," something to that effect.

The unidentified third party's assertions were admitted as evidence that the robber's first name was "Odie" and would have been inadmissible hearsay. However, these assertions were admissible as an adoptive admission because they were made in the presence of the defendant and the defendant responded to the assertions in a manner which was at least equivocal, at most affirmative.

■ An equivocal response to an assertion of fact which, if true, a reasonable person would be expected to deny, is an adoptive admission which may be admitted as evidence tending to show the truth of the assertion. *Robinson v. State* (1977), 266 Ind. 604, 365 N.E.2d 1218; Federal Rules of Evidence 801(d)(2). In the case at bar, the robber's responses indicated that he heard and understood the statements addressed to him. One who is addressed by the wrong name would reasonably be expected to inform the speaker of his error, not make plans to meet with the speaker later and listen to music. Appellant's unequivocal response rendered testimony of the assertions and the responses admissible to establish that he tacitly admitted the assertion that his name was Odie.

## II. Sufficiency of the Evidence

■ Appellant argues that the identification evidence is not sufficient to establish that he was the perpetrator of the crime. When confronted with a challenge to the sufficiency of the evidence, this Court does not reweigh the evidence or evaluate the credibility of the witnesses. Rather, we consider that evidence most favorable to the judgment and all reasonable inferences to be derived therefrom. If there is substantial evidence of probative value which would permit a trier of fact to find the existence of each element of the offense beyond a reasonable doubt, then the judgment must be affirmed. *Richards v. State* (1985), Ind., 481 N.E.2d 1093. Quite aside from the presence of Miller's fingerprints on a magazine from the section of the rack perused by the perpetrator, Zielinski identified Miller in court as the robber. Even uncorroborated testimony by an eyewitness is sufficient to sustain a conviction. *Griffin v. State* (1986), Ind., 493 N.E.2d 439.

## III. Deadly Weapon

Appellant argues that a screwdriver used only as a tool to pry open a cash register and not to threaten or harm the victim does not constitute the "deadly weapon" requisite for a class B felony robbery.

The following evidence was presented by the State to establish that the screwdriver appellant used constituted a deadly weapon. Zielinski testified that appellant walked behind the counter carrying a screwdriver in his hand. When he came around the counter, he walked toward Zielinski but stopped at the first cash register. He then tried, unsuccessfully, to pry open this register with the screwdriver. Zielinski was standing five to six feet away. She testified that she was frightened because she did not know how he was going to use the screwdriver or if he was going to use the screwdriver on her. During cross-examination, she testified that appellant never threatened her with the screwdriver:

Q. Now, you said this individual came around the counter with a screwdriver in his hand?

A. Yes.

Q. And just immediately went to the cash register?

A. Yes.

Q. Using the screwdriver to pry it open?

A. Yes.

Q. Or try to pry it open?

A. Yes.

Q. Never threatened you with it in any fashion, opened it up or say, 'I'm going to stick you with it?'

A. No.

Q. Never waved it in your face or tried to jab you with it.

A. No.

While the robbery was being committed, Freeman was engaged in a telephone conversation with her boyfriend. Freeman testified that the robber "poked" the screwdriver toward Zielinski:

Q. When this man came around the corner, what did you see him do?

A. He rushed around the corner. He had a screwdriver in his hand.

Q. What was he doing with the screwdriver in his hand?

A. Well, first of all, he poked it toward Lee Ann, told her to get back.

Q. What did she do?

A. She backed up.

Q. Then what happened?

A. He proceeded to try to pry open the first register with the screwdriver. But all he really did was jam it. And then he couldn't get it open. So he again poked the screwdriver toward Lee Ann and told her to open it.

■ A deadly weapon is a loaded or unloaded firearm or "a weapon, device, equip-

ment, chemical substance, *or other material that in the manner it is used, or could ordinarily be used, or is intended to be used,* is readily capable of causing serious bodily injury." [1] Ind.Code § 35–41–1–2 (Burns 1979 Repl.) (Emphasis added). The question presented is whether the screwdriver in Miller's hand was used in a manner by which it could be considered a deadly weapon. In 1954, this Court indicated that the natural or intended purpose of an object did not control this determination. Justice Gilkison wrote: "A soft drink bottle is not designed to be either an offensive or defensive weapon, but the experience of man teaches us that it may be so used." *Short v. State* (1954), 234 Ind. 17, 23, 122 N.E.2d 82, 86. When the object is used against a crime victim in a capacity similar to a weapon, then it rises to the class of weapons specifically designated in the predecessor statute. *Id.*

Later, we enunciated a standard by which to evaluate whether an object constitutes a deadly weapon:

The test for whether an item is a deadly or dangerous weapon is a "usage test".... It is not the originally intended use of the object which is important, but the manner in which it is used during the crime.

*Cummings v. State* (1979), 270 Ind. 251, 384 N.E.2d 605, 606. *See also, Maynard v. State* (1986), Ind., 490 N.E.2d 762; *Lamb v. State* (1984), Ind., 462 N.E.2d 1025.

■ Under this standard, we have viewed the actual ability of the object to function as a weapon capable of inflicting serious bodily injury under the factual circumstances of the case.[2] It does not mat-

---

1. "Serious bodily injury means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." Ind.Code § 35–41–1–2 (Burns 1979 Repl.).

2. *Maynard,* 490 N.E.2d 762 (victim beat with a tire iron); *Lamb,* 462 N.E.2d 1025 (defendant threatened to hurt the victim while he held a screwdriver in his hand in a threatening man-

ner); *Johnson v. State* (1983), Ind., 455 N.E.2d 932 (automobile constitutes a deadly weapon when used in a manner readily capable of causing serious bodily injury); *Hatton v. State* (1982), Ind., 439 N.E.2d 565 (defendant threatened to hurt victim with a crow bar which he held close to the victim's head); *Majors v. State* (1980), 274 Ind. 261, 410 N.E.2d 1196 (defendant held a "big rock or brick" over his head while telling the victim, "I am going to kill somebody."); *Cummings,* 270 Ind. 251, 384 N.E.2d 605, (stapler used as bludgeoning instru-

ter if actual injuries were sustained by the crime victim, provided the defendant had the apparent ability to injure the victim seriously through his use of the object during the crime. *Lamb*, 462 N.E.2d 1025.

However, when different conclusions can be reached as to whether the weapon is deadly, it is a question of fact for the jury to determine from a description of the weapon, the manner of its use and the circumstances of the case. *Glover v. State* (1982), Ind., 441 N.E.2d 1360; *accord, Clark v. State* (1986), Ind., 498 N.E.2d 918. Similarly, we hold this rule applies when an object, rather than a weapon, is involved.

In the case at bar, there was conflicting testimony by the eyewitnesses. Zielinski testified that appellant never threatened her with the screwdriver nor jabbed it toward her, while Freeman testified that Miller poked the screwdriver toward Zielinski and told her to "get back." Zielinski also testified that she was afraid because she did not know whether appellant would harm her with the screwdriver. We cannot say that the jury's determination that appellant was armed with a "deadly" weapon was clearly erroneous.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.

ment to inflict injury); *Jones v. State* (1978), 269 Ind. 543, 381 N.E.2d 1064 (a starting pistol, capable of firing only blanks, is a deadly weapon when used as a bludgeoning instrument); *Liston v. State* (1969), 252 Ind. 502, 250 N.E.2d 739 (broken porcelain chunks from sinks and toilets, which had rough and jagged edges, constituted a deadly weapon when thrown at another human being at close range).