Ronnie ROGERS, Appellant,

v.

STATE of Indiana, Appellee.

No. 71S00–8804–CR–440.

Supreme Court of Indiana.

May 3, 1989.

Rehearing Denied July 12, 1989.

Kenneth M. Hays, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Robbery, a Class B felony, for which he received a sentence of fourteen (14) years.

The facts are: At about 10:00 a.m. on July 14, 1987, a black male entered the First Source Bank of South Bend and shoved what appeared to be a .45 caliber automatic pistol to the head of Donald Nemeth, a bank employee. He demanded some money and gave Terese Fansler a white plastic bag in which she placed $25. He stated the amount was insufficient so Fansler said she would get more. She told Linda Tollison, a teller, to put some money in the bag. She placed inside it approximately $260, including $100 of bait money for which the bank kept a list of the bills' serial numbers. The man took the money and ran. Fansler testified that he was wearing sunglasses and a hat during the robbery.

James Kowalski testified that at approximately 10:05 a.m. on July 14, 1987 he approached the entrance of the bank to make

a deposit. Before he entered he heard someone shouting, "Hurry it up baby, hurry it up baby," and he became suspicious. He shut the door and a few moments later a black man exited the bank wearing sunglasses and a hat, and he said, "Hi" to Kowalski. Kowalski watched him hurry down the street and approach a dark-colored van.

Officer Haywood testified that he responded to the dispatch concerning an armed robbery. He learned from observers a short distance from the bank that a black male had entered a black van and headed north on Franklin Street.

Police stopped the van and inside it found a white plastic bag containing the bait money and regular currency, a disabled .45 automatic gun, a pair of sunglasses, a hat, and appellant.

Police took appellant to the bank approximately one-half hour after the incident, and each witness who observed the robbery and the robber's departure from the bank identified appellant as the robber.

█ Appellant argues the trial court erroneously admitted into evidence the items police seized from the van. He asserts that the investigatory stop of his vehicle was without probable cause and unlawful; thus the evidence obtained as a result of the stop was inadmissible.

A police officer may make an initial investigatory stop of a person or vehicle, even though probable cause for arrest is lacking, when the facts known to the officer at the time of the stop are such to warrant a man of reasonable caution to believe that an investigation is appropriate. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Gann v. State* (1988), Ind., 521 N.E.2d 330.

Police were searching for a black male suspected to be an armed robber in the area of the bank located on Michigan and Ewing Streets. Police were informed that the suspect was last seen by Kowalski in the area of Ewing and Franklin Streets, where a dark van was seen. Bystanders in that area told police a black male had driven the van north on Franklin Street, and a van matching that description was seen heading that direction. We find the facts known to police at the time of the stop were sufficient to warrant a man of reasonable caution to believe an investigation was appropriate, and no error occurred in the admission of the exhibit.

Appellant argues that the witnesses' in-court identifications of him were unreliable and should not have been admitted.

Appellant was identified at trial by Fansler, Kowalski, and Linda Harper. He contends the in-court identifications were not the product of witnesses' independent recollections of the robber, but were recollections of the person police presented during the showup procedure, by arguing that the witnesses' descriptions of him varied in their estimation of his weight and amount of facial hair; witnesses were unable to recall any unique identifying marks on appellant such as a tattoo or mole; however, he does not state what unusual marks he has which witnesses should have remembered. He further argues the robber was in the bank for only a few frenzied minutes; Harper identified him by his eyes, but he wore sunglasses during the robbery; the State failed to conduct a photographic lineup; and the fact that he was handcuffed and escorted by police gave witnesses the impression that police believed he was the robber. Therefore, appellant contends the witnesses' in-court identifications of him were based upon the suggestive showup procedure and not upon their recollections of the robber.

█ Appellant is correct in his assertion that an in-court identification of the accused is impermissible when it is tainted by an unduly suggestive pretrial confrontation unless it can be shown that a factual basis for the identification exists independent of the pretrial confrontation. *Hegg v. State* (1987), Ind., 514 N.E.2d 1061.

█ We have held that showup identifications are not per se impermissible if held immediately after the crime, for they allow the witnesses to view the suspect while the image of the perpetrator is still fresh in their minds. *Russell v. State* (1988), Ind.,

519 N.E.2d 549. To determine whether a particular identification is impermissibly suggestive, we consider whether there is a substantial likelihood of misidentification in light of all the circumstances. *Linthicum v. State* (1987), Ind., 511 N.E.2d 1026. The fact that appellant was handcuffed at the time of the showup does not itself render the process so unduly suggestive that it violated his due process rights. *Dudley v. State* (1985), Ind., 480 N.E.2d 881.

■ In appellant's case, Fansler testified that at the showup she was one-hundred-percent sure appellant was the robber, and she was not making a positive identification because he was detained by police.

Harper testified that she was completely sure the suspect at the showup was the robber. She stated she remembered his eyes, despite the fact he wore sunglasses, because she saw him from an angle and remembered how big his eyes were. She also stated she was not influenced in her identification by the fact that appellant was flanked by police officers. Upon making her in-court identification, she testified that she was identifying him not because he was a defendant in the case, but because he was the man who robbed the bank. The substance of Kowalski's testimony regarding the showup procedure was substantially the same.

Any inconsistencies in the evidence may affect the credibility of the witnesses, but conflicts do not require a suppression of the identification based on suggestive procedure. *Hazzard v. State* (1980), 274 Ind. 679, 413 N.E.2d 895. We find no error in the identification procedures.

■ Appellant asserts the evidence is insufficient to sustain his Class B robbery conviction because the State failed to prove he used a deadly weapon. It was stipulated by appellant and the State that the .45 caliber automatic pistol appellant held during the robbery was a disabled gun and could not be fired.

Indiana Code § 35–42–5–1 states that a robbery is a Class B felony if it is committed while armed with a deadly weapon. A "deadly weapon" means: 1) a loaded or unloaded firearm; or 2) a weapon or other material that in the manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury. Ind.Code § 35–41–1–8.

It is appellant's position that in determining whether an object is a deadly weapon, we must consider the manner in which the object was used, and not how it may have been used. He points out that he merely held the disabled gun to Nemeth's head to frighten and intimidate people, but he never bludgeoned anyone with it or used it in a manner which could have resulted in serious bodily injury. Therefore, the evidence does not support his Class B felony conviction.

Appellant is correct in his assertion that this Court previously has used the "usage test" to determine whether an item is a deadly weapon, concentrating not on the originally-intended use of the object, but the manner in which it was used during the crime. *Cummings v. State* (1979), 270 Ind. 251, 384 N.E.2d 605.

However, this Court also has deemed that a screwdriver, a crowbar wrapped in a towel, and a piece of asphalt were deadly weapons when used in a threatening manner which frightened the victims. *Lamb v. State* (1984), Ind., 462 N.E.2d 1025; *Hatton v. State* (1982), Ind., 439 N.E.2d 565; *Majors v. State* (1980), 274 Ind. 261, 410 N.E.2d 1196. It has been held that a gun which shoots only blanks could be a "deadly weapon." *Barber v. State* (1981), Ind. App., 418 N.E.2d 563.

In appellant's case Nemeth testified that appellant pushed him hard against a window and put a gun next to his ear, told him not to move, and yelled at Fansler to give him the money. Nemeth stated he felt cold metal pressed against his head, he believed it was a .45 caliber gun, and he was afraid because he thought his life had ended. Fansler testified that appellant had a gun to Nemeth's head, and she felt sure that Nemeth or someone was going to be shot. Harper stated that they were all frightened during the robbery.

Officer Brassell testified that upon investigating appellant's van he found what ap-

peared to be a gun. He removed it from the plastic bag so that he could make the weapon safe in case it contained live ammunition. He then discovered that the gun appeared to be a .45 automatic and it was labelled as such on its side, but the barrel was plugged and it had no firing pin.

Whether there is sufficient evidence of a deadly weapon is determined by looking to whether the weapon had the actual ability to inflict serious bodily injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime. Questions of manner and circumstances of use, and weapon description, are jury questions when differing conclusions may be reached as to the weapon's deadly propensities. *Miller v. State* (1986), Ind., 500 N.E.2d 193.

The realism of the weapon coupled with appellant's threatening behaviour caused the victims to fear for their lives. We find the disabled pistol used by appellant in the robbery was a "deadly weapon" within the meaning of Ind.Code § 35–42–5–1.

Appellant argues the trial court improperly refused his tendered instructions. Both tendered instructions concerned identification of the robber, stating the jury should consider the witnesses' opportunity to observe the offender, whether the witnesses may be influenced by the circumstances under which the defendant was presented to them and the credibility of each identification witness. Appellant believes he was prejudiced by the refusal of the instructions in light of the suggestive nature of the showup and the conflicts in testimony concerning the witnesses' descriptions of him.

■ In determining whether a tendered jury instruction was properly refused, we must consider whether the instruction was a correct statement of law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction was covered by other instructions. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153.

■ The jury was instructed that they were the exclusive judges of the credibility of the witnesses, and they were to consider the witnesses' ability to observe, their manner and conduct while testifying, and any interest or bias they may have. We find the instructions given at trial adequately covered the substance of appellant's tendered instructions, and they were properly refused.

■ Appellant contends the trial court erroneously instructed the jury on flight. The State's Instruction No. 5 stated:

"You are instructed that you may consider evidence of flight of the accused, if any, as showing consciousness of guilt, along with all the other evidence in the case."

Appellant asserts that the use of the term "accused" was improper. He states that because the identity of the robber was an issue, the court should not have given an instruction which conveys the court's belief that the person who fled was appellant.

We fail to see how appellant was prejudiced from the use of the word "accused" in the instruction. Witnesses of the robbery positively identified him as the robber; he was found with the weapon and clothing used by the robber and the bait money stolen by the robber. The instruction on flight was supported by the evidence. We find no error. *Kiper v. State* (1983), Ind., 445 N.E.2d 1353.

■ Appellant also claims the instruction on the presumption of innocence was improper. Instruction No. 6 stated:

"In clothing those charged with the presumption of innocence, the law does not contemplate that thereby the guilty should be shielded from merited punishment. Its object is to protect the innocent, so far as human agencies can, from the effects of unjust verdicts. The effect of this presumption is to withhold punishment from one charged with crime until all the facts necessary to constitute the offense charged have been proved to that degree of certainty fixed by law as being beyond reasonable doubt.

If a defendant is innocent, he should not be convicted erroneously, but if a defendant is guilty, he should not be acquitted erroneously."

Appellant believes the instruction implies that only those who are innocent are clothed with the presumption of innocence, and those who are guilty are not.

We observe that the instruction would be improved if the last sentence read: "If the State has failed to prove the defendant guilty beyond a reasonable doubt, he should not be convicted, but if the defendant has been proven guilty beyond a reasonable doubt, he should not be acquitted erroneously." However, the jury was instructed that a person charged with a crime is presumed to be innocent, and to overcome the presumption of innocence, the State must prove the defendant guilty of each essential element of the crime charged beyond a reasonable doubt. The defendant is not required to present any evidence to prove his innocence.

Considering the instructions as a whole, they impress upon the jury the importance of maintaining the belief in the defendant's innocence until the State has met its burden of proof. The instruction about which appellant complains has been approved by this Court. *Heald v. State* (1986), Ind., 492 N.E.2d 671 (Shepard and Dickson, JJ., dissenting); *Green v. State* (1984), Ind., 461 N.E.2d 108; *Warriner v. State* (1982), Ind., 435 N.E.2d 562.

Appellant contends reversible error occurred by giving State's Instruction No. 7, which stated:

"It does not matter if actual injuries were sustained by the crime victim, provided the defendant had the apparent ability to injury (sic) the victim seriously through his use of the object during the crime."

Appellant believes the instruction was an incorrect statement of the law and caused the jury to speculate about the possible ways the disabled gun could have been used as a weapon.

The instruction was a quote from *Miller, supra,* in which a screwdriver was held to be a deadly weapon because evidence existed that the defendant threatened the victim by pointing it at her. We hold that the instruction was a correct statement of the law and appropriate under the facts in appellant's case.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.