**Glendal RHOTON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–1004–CR–446.

Court of Appeals of Indiana.

Dec. 22, 2010.

---

Michael R. Fisher, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Brian Reitz, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Glendal Rhoton appeals his convictions for murder and burglary, as a Class C felony, and the sentences imposed following a jury trial. Rhoton presents three issues for review:

1. Whether the trial court abused its discretion when it instructed the jury on burglary.

2. Whether the evidence is sufficient to support Rhoton's conviction for murder.

3. Whether Rhoton's sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Late in the evening of September 2, 2008, Kimberly Philpot drove Rhoton, her ex-husband, to the Road Dog Saloon in Indianapolis. Rhoton told her to leave, so she drove to a nearby strip mall to wait. The saloon was closed, but Rhoton walked to the back of the building with a pickax and flathead screwdriver. When Philpot returned about ten minutes later, Rhoton threw the pickax in the back of the truck and screwdriver in the cab and said, " 'I smashed the dicksucker's brains in.' " Transcript at 382.

At Rhoton's request, Philpot left again and then returned fifteen minutes later. She saw Rhoton in a shed behind the saloon, left again, and returned a few minutes later to find Rhoton waiting for her by the street. He instructed her to pull around back. There Rhoton and Philpot loaded two barrels full of frozen meat and other food into the back of the truck. As they left the saloon, Rhoton told Philpot that he needed to get rid of the pickax. Philpot drove back to the strip mall, where Rhoton placed the pickax next to a green recycling bin.

Shortly before eleven o'clock on the evening of September 2, 2008, Officer Frank Vanek of the Indianapolis Metropolitan Police Department ("IMPD") was dispatched to investigate an alarm at the Road Dog Saloon on the southeast side of Indianapolis. When Officer Vanek arrived, he found that the doors to the saloon were secure. However, in the rear of the

building, he found Martin Wilburn wrapped in a blanket and lying facedown on a row of chairs that had been pushed together. Wilburn had suffered several severe injuries to his head and was bleeding profusely. The officers called for medics, who arrived within ten minutes and transported Wilburn to the hospital. Officers on the scene discovered that the shed in back of the saloon was not secure and that frozen food was missing from the shed's freezer.

Wilburn died a short time later as a result of his injuries. He had suffered three large lacerations around and below his left ear. Each laceration was approximately one and one-half inches long, and the one below the left earlobe penetrated "approximately one inch into the tissues of the lower portion of the skull." Transcript at 335. In one of the skull fractures Wilburn had sustained, "a piece of bone was literally pushed in causing a punched out effect[,]" and his brain was lacerated. *Id.*

At the same time that evening, IMPD Officer Craig Wildauer was assisting another officer with an arrest for possession of marijuana on the east side of Indianapolis. When the arrestee's cell phone rang, Officer Wildauer answered and pretended to be the arrestee. In a very brief conversation, the caller, a male, asked to meet. Subsequently a female called the arrestee's cell phone, and then a male got on the phone. Officer Wildauer agreed to meet the caller at the intersection of East Washington Street and Sherman. Shortly after Officer Wildauer drove to that intersection, he saw a pickup truck pull in to a parking lot on the southwest corner without using a turn signal, and the truck's driver was not wearing a seatbelt. Officer

Wildauer initiated a traffic stop of the truck.

In the traffic stop, the officer learned that Kimberly Philpot was the driver, and Rhoton was her passenger. Philpot and Rhoton appeared nervous. Officer Wildauer noticed that the bed of the truck contained large barrels filled with frozen meat and frozen breaded mushrooms. Officer Brady Ball arrived as backup. Officer Wildauer had Rhoton wait on the truck's open tailgate while he took Philpot to the front of the truck. Once at the front of the truck, Philpot told the officer that she thought someone at the Road Dog Saloon needed help. When the officers inquired through IMPD about a problem at the Road Dog Saloon, they learned of the break-in and Wilburn's injuries. Philpot then told Officer Ball that Rhoton had left a pickax by the recycling bin behind a strip mall. Later testing disclosed the presence of Wilburn's blood and DNA on the pickax.

The State charged Rhoton with murder and burglary, as a Class A felony. Subsequently, the State charged him as an habitual offender. The case was tried to a jury on March 22 and 23, 2010. Following deliberations after the close of evidence, the jury found Rhoton guilty as charged. Pursuant to agreement, Rhoton admitted to being an habitual offender in return for the State's agreement that the habitual offender enhancement would attach to the sentence imposed for burglary.

On March 31, the court held a sentencing hearing. The court entered a judgment of conviction for murder and burglary, as a Class C felony.[1] The court then sentenced Rhoton as follows:

So on count 1 [murder] I'll find as aggravating factors the rape in '67, the

---

1. The injury causing Wilburn's death was the same injury used to elevate the burglary charge to a Class A felony. To avoid a double

jeopardy violation, the court reduced the burglary conviction from a Class A to a Class C felony.

burglary in '71, the marijuana possession in 2001, the domestic battery in 2001, the cocaine possession in 2002, the domestic battery in 2006, the two probation violations and the callous nature of the murder because the evidence does seem to suggest that the victim was lying down if not asleep when he was murdered. The mitigating factors are the defendant's age and his medical situation. You will not [sic] I have not included as aggravating factors the two felonies you included as the habitual [offender allegation], because they are elements in the habitual [offender charge]. I'm not sure if I can double dip, even though the habitual will be attached to count 2 [burglary]. On count 1 [murder] I will find that the appropriate sentence—I'll find that the aggravating factors greatly outweigh the mitigating factors and impose the maximum sentence of 65 years. Count 2 I will use the same aggravating factors find that as a Class C felony I'll enter a sentence of 8 years, that will be enhanced by 8 years for the habitual offender finding, which total[s] 16 years. The sentences for the two counts will be ordered served consecutively again relying on the same aggravating factors for a total I believe of 81 years.

Transcript at 601–02. Rhoton now appeals.

## DISCUSSION AND DECISION

### Issue One: Jury Instruction

■ Rhoton first argues that the trial court abused its discretion when it instructed the jury on burglary. The standard of reviewing jury instructions is well-settled:

"The purpose of a jury instruction 'is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case

clearly and arrive at a just, fair, and correct verdict.'" *Dill v. State,* 741 N.E.2d 1230, 1232 (Ind.2001) (quoting *Chandler v. State,* 581 N.E.2d 1233, 1236 (Ind.1991)). Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. *Schmidt v. State,* 816 N.E.2d 925, 930 (Ind.Ct.App. 2004), *trans. denied.* Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. *Id.* The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury. *Id.* at 930–31. Still, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Id.* at 933 (citing *Dill,* 741 N.E.2d at 1233).

*Williams v. State,* 891 N.E.2d 621, 630 (Ind.Ct.App.2008). Further:

In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court.

*Simpson v. State,* 915 N.E.2d 511, 519 (Ind.Ct.App.2009) (quotation omitted), *trans. denied.*

■ Again, the State charged Rhoton with burglary, as a Class A felony. Over Rhoton's objection, the trial court instructed the jury as follows:

The crime of Burglary, a Class A felony with which the Defendant is charged in Count 2, is defined as follows:

"A person who breaks and enters the building or structure of another person, with the intent to commit a felony there-

in, and who causes serious bodily injury to any other person, commits Burglary, a Class A felony."

To convict [Rhoton] of Burglary, a Class A felony, the State must have proved each of the following elements beyond a reasonable doubt:

1. The Defendant, Glendal J. Rhoton,
2. knowingly or intentionally
3. broke and entered the structure and dwelling of another person, with intent to commit the felony of Theft therein, and
4. a person other than the Defendant suffered bodily injury.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you may find the Defendant guilty of Burglary, a Class A felony as charged in Count 2.

Appellant's App. at 101. Rhoton's proposed jury instruction, which the trial court rejected, also required the jury to find an additional element, namely, that Rhoton was armed with a deadly weapon when he broke and entered.

Rhoton contends that the trial court's instruction does not correctly state the law. Specifically he argues that "the issue turns upon the construction of the statute. It is reasonable to conclude that the statute requires that in order to constitute an A felony, the facts must show a defendant was armed and that bodily injury or serious bodily injury resulted." Appellant's Brief at 9. We cannot agree.

Indiana Code Section 35–43–2–1 defines burglary as follows:

A person who breaks and enters the building or structure of another person, with intent to commit a felony in it,

commits burglary, a Class C felony. However, the offense is:

(1) a Class B felony if:

(A) it is committed while armed with a deadly weapon; or

(B) the building or structure is a:

(i) dwelling; or

(ii) structure used for religious worship; and

(2) a Class A felony if it results in:

(A) bodily injury; or

(B) serious bodily injury;

to any person other than a defendant.

Rhoton argues that the use of the conjunction "and" between subsections (1), defining the Class B felony, and (2), defining the Class A felony, show that the State attempting to prove the Class A felony must also prove all the elements of the Class B felony. A plain reading of the statute does not support Rhoton's contention that the elements of the two felonies are cumulative. Further, Rhoton cites no case law in support of his creative construction of the statute, nor did our research reveal any. Rather, case law supports the construction applied by the trial court. *See Daniel v. State,* 582 N.E.2d 364, 370 (Ind.1991) (elements of Class A felony include elements of Class C felony burglary plus serious bodily injury), *cert. denied,* 506 U.S. 838, 113 S.Ct. 116, 121 L.Ed.2d 72 (1992); *Fields v. State,* 825 N.E.2d 841, 848 (Ind.Ct.App.2005) (burglary is a "Class A felony if it results in bodily injury or serious bodily injury to any person other than a defendant"), *trans. denied; Williams v. State,* 771 N.E.2d 70, 75 (Ind.Ct.App.2002) ("person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary as a C felony [and] charge is elevated to a class A felony when a victim suffers bodily injury."). The final instruction on Class A

felony burglary correctly stated the law. Thus, the trial court did not abuse its discretion in instructing the jury on burglary, as a Class A felony.

■ Even if the final instruction had incorrectly stated the law, any error would have been harmless. Because the murder verdict was based on the same bodily injury as the Class A felony burglary verdict, the trial court entered judgment of conviction for Class C felony burglary to avoid a double jeopardy violation. Rhoton argues that the State was required to show that he was armed with a deadly weapon in order to support a Class A felony burglary conviction, but such evidence was not required to prove Class C felony burglary. And, in any event, Rhoton makes no argument that the evidence was insufficient to convict him of Class C felony burglary. Thus, any error in the instruction would have been harmless.

### Issue Two: Sufficiency of Evidence

■ Rhoton next contends that the evidence is insufficient to support his conviction for murder. To prove murder, the State was required to show that Rhoton knowingly killed Wilburn. *See* Ind.Code § 35-42-1-1. Rhoton argues that the testimony connecting him to the time and location of the killing is inherently improbable and that there is no "substantial evidence of probative value to show there was an intentional killing." Appellant's Brief at 11. We address each contention in turn.

When reviewing the claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence supporting the verdict and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.*

Rhoton first argues that the evidence of his involvement in Wilburn's murder is based on Philpot's testimony but that her testimony is "incredible." Appellant's Brief at 13. Philpot testified that Rhoton asked her to drive him to the Road Dog Saloon late on the evening of September 2. When they arrived at the saloon, there were no cars in the parking lot or lights on, but Rhoton got out of Philpot's truck and took with him a pickax and a screwdriver. Philpot then drove to a strip mall a few blocks away to wait ten minutes before returning to the saloon. When Philpot returned, Rhoton put the pickax in the back of the truck and the screwdriver in the cab. Rhoton told Philpot, "I smashed the dicksucker's brains in." Transcript at 382. Philpot returned to the strip mall alone and waited a few minutes before driving back to the saloon. She returned once to see Rhoton at the back of the saloon, drove back to the strip mall to wait again, then again drove back to the saloon, where she found Rhoton standing "out towards the street." *Id.* at 385. At Rhoton's request, she pulled around back, where she and Rhoton loaded into the back of the truck trashcans full of frozen food. Philpot then drove back to the strip mall, where Rhoton left the pickax next to a recycling bin.

A short time later, Rhoton and Philpot were questioned by police incident to a traffic stop. Philpot told officers that someone at the saloon needed help. She then led officers to the recycling bin behind the strip mall where Rhoton had left the pickax. At about the same time, officers responding to an alarm at the saloon had already found Wilburn fatally injured. He was lying on chairs pushed together

behind the saloon, was wrapped in a blanket, and had sustained one and one-half inch gashes to the left side of his skull. Wilburn later died from his wounds. Subsequent testing of a red stain on the pickax revealed the presence of Wilburn's DNA.

The evidence is sufficient to link Rhoton to Wilburn's murder. Still, Rhoton contends that Philpot's complicity in the offenses that evening render her testimony "incredible." Appellant's Brief at 13. In support of his argument that his murder conviction should be reversed, he cites the rule requiring reversal where "a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence[.]" *Id.* (citing *Tillman v. State*, 642 N.E.2d 221, 223 (Ind.1994)). But Rhoton has not shown that Philpot's testimony is inherently improbable. Instead, he merely asks us to reweigh her testimony, which we cannot do. *See Jones*, 783 N.E.2d at 1139. Further, the existence of Wilburn's DNA on the pickax that Philpot saw Rhoton take to the saloon is circumstantial evidence linking Rhoton to the murder, as is a broken tip of a screwdriver found at the scene. Rhoton's argument under the incredible dubiosity rule must fail.

 Rhoton also contends that the State did not establish that he knowingly killed Wilburn. In support, he argues that there is

no evidence of the circumstances under which the victim died.

Even if it is inferred from Ms. Philpot's testimony that Mr. Rhoton struck the victim with the pickax, there is still no showing that he did so knowingly. The evidence, if Ms. Philpot is credible, shows that Mr. Rhoton was present at

the Road Dog Saloon and he had the pickax from which the DNA of the victim was recovered. Even considering the statement by Mr. Rhoton that he "smashed the dicksucker's brains in[,]" nothing is known about what happened. There is simply not substantial evidence of probative value that he knowingly killed the victim.

Appellant's Brief at 14–15 (internal citations omitted).

Again, Rhoton asks that we reweigh the evidence, which we cannot do. *See Jones*, 783 N.E.2d at 1139. The evidence shows that Rhoton was present at the saloon around the time of the murder, had in his possession a pickax, and boasted to Philpot that he had "smashed [someone's] brains in." Transcript at 382. Later testing of a red stain on the pickax revealed Wilburn's DNA, and his wounds were consistent with being struck in the head by a pickax. On such evidence, the jury could reasonably have inferred that Rhoton knowingly killed Wilburn with the pickax. We conclude that the evidence is sufficient to support Rhoton's conviction for murder.

### Issue Three: Appellate Rule 7(B)

 Finally, Rhoton contends that his sentence for murder is inappropriate in light of the nature of the offenses and his character.[2] Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize [ ] independent appellate review and revision of a sentence imposed by the trial court." *Roush v. State*, 875 N.E.2d 801, 812 (Ind.Ct.App.2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id.* Revision of a sentence under Appellate Rule 7(B) requires the appellant

**2.** Rhoton does not specify whether he seeks review of one or both sentences. But his arguments under Rule 7(B) refer only to the

sentence imposed for murder. Thus, we limit our review to that sentence.

to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. *See* App. R. 7(B); *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind.Ct.App.2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State,* 856 N.E.2d 142, 147 (Ind.Ct.App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Roush,* 875 N.E.2d at 812 (alteration original).

We first consider the nature of the offenses. Rhoton concedes that the murder was "an utterly senseless crime[.]" Appellant's Brief at 17. But he attempts to lessen the severity by arguing that it was "committed by a man who had been bingeing on cocaine and alcohol" on the day of the offense. *Id.* He also observes that he had "harbored no ill will toward the victim" and that "he had even helped him out on several occasions." *Id.* Rhoton's argument is not persuasive. The violent murder of a reclining or possibly sleeping man cannot be mitigated by prior kindnesses to and lack of ill will toward the victim.

We next consider Rhoton's character. He begins his argument on this point by defining himself as a "drug abuser and an alcoholic." *Id.* at 17. He also states that he suffers from nerve damage, degenerative disk disease, and problems with his lower extremities, and that he was sixty-one years old at the time of sentencing. As such, he argues, "any extended term of imprisonment would be more detrimental to [him than] to a younger offender." *Id.* at 18. Again, Rhoton's argument is unavailing. His poor health and age are considerations but do not, in this instance, outweigh the heinousness and gravity of the murder. Nor are we persuaded by his

argument that a lengthy sentence would be more detrimental to [him] than to a younger offender." *Id.* Considering both the nature of the offense and Rhoton's character, we cannot say that the maximum sentence of 65 years for murder is inappropriate.

Affirmed.

DARDEN, J., and BAILEY, J., concur.