**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**LAWRENCE M. HANSEN**
Hansen Law Firm, LLC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jun 18 2012, 9:55 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

WILLIAM B. CAPPS, JR.,                )
                                      )
    Appellant-Defendant,              )
                                      )
        vs.                       )     No. 29A02-1108-CR-694
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.               )

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Daniel J. Pfleging, Judge
Cause No. 29D02-1010-FC-327

**June 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

William B. Capps, Jr. ("Capps") appeals from his convictions for one count of battery by means of a deadly weapon[1] as a Class C felony and one count of criminal confinement[2] as a Class C felony. Capps presents the following restated issues for our review:

I. Whether the trial court erred by denying Capps's motion for a directed verdict on the battery charge because the State failed to prove that he used a deadly weapon when committing the offense; and

II. Whether the trial court committed fundamental error by improperly instructing the jury on the elements of the criminal confinement charge.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Craig Ricketts ("Ricketts") worked for Capps installing carpet during the summer of 2010. Capps is Ricketts's cousin. On the evening of October 2, 2010, Capps stopped at Ricketts's house in Noblesville, and they eventually drove away in Capps's van. At some point, Ricketts looked at his cell phone to check the time. Capps grabbed the cell phone and struck Ricketts with his fist. Capps had accused Ricketts of stealing his marijuana plants. Capps believed that Jeff Hunter ("Hunter") was involved with Ricketts in stealing Capps's marijuana crop and instructed Ricketts to call Hunter to meet him at a nearby truck stop. There, Capps told Hunter to look at something in the van. As Hunter walked to the back of the van, Capps struck him hard in the temple and temporarily knocked him out. Capps continued hitting Hunter while asking him what he did with the marijuana.

---

[1] *See* Ind. Code §35-42-2-1(a)(3).

[2] *See* Ind. Code § 35-42-3-3-(b)(1)(B); Ind. Code § 35-42-3-3(a)(2).

2

Hearing police sirens, Capps fled the scene with Ricketts. Capps drove toward Noblesville, and during the drive, he threatened to kill Ricketts. Capps also struck Ricketts a few more times with his fist, and again in the chest with a rubber mallet. Capps then shoved Ricketts's head between the seat and the back side doors cutting Ricketts's ear.

Hunter called the police then went to the sheriff's department and provided a statement about the incident. Ricketts also told the officers about the incident, and the police took photographs of Ricketts's and Hunter's injuries.

Capps was arrested, and on October 4, 2010, the State charged him with Count I, Class C felony battery upon Ricketts by means of a deadly weapon; Count II, Class C felony criminal confinement; Count III, Class D felony intimidation; Count IV, Class D felony intimidation; and Count V, Class A misdemeanor battery upon Hunter resulting in bodily injury. During Capps's jury trial that commenced on June 7, 2011, Capps moved for a directed verdict on the confinement and battery by means of a deadly weapon charges, claiming that the State had failed to prove the elements of the offenses. More particularly, Capps claimed that the State did not show that a deadly weapon was used in the commission of the battery offense. Following the presentation of the evidence, final instructions were discussed, and Capps did not object to the trial court's instructions. In fact, Capps specifically accepted the instructions that were given. The jury found Capps guilty as charged on June 8, 2011.

On July 1, 2011, the trial court sentenced Capps to four years of incarceration on Count I, with two years suspended to probation; four years imprisonment, with two years

3

suspended to probation on Count II; 545 days of imprisonment on Count III; 545 days imprisonment, with the entire sentence suspended to probation on Count IV; and to 365 days in jail, with the entire sentence suspended to probation on Count V. The trial court ordered Capps to serve the executed portion of his sentences between work release and home monitoring detention. The sentences on Counts I, II, and III were ordered to be served concurrently, and Counts IV and V were ordered to be served concurrently but consecutively to Counts I through III. Capps now appeals.

## DISCUSSION AND DECISION

### I. Motion for Directed Verdict

Capps claims that the trial court erred in denying his motion for a directed verdict on the battery charge because the State failed to prove the elements of that offense. In particular, Capps claims that the State failed to show that a rubber mallet constituted a deadly weapon for purposes of the battery statute and that Ricketts's testimony was inherently improbable and unbelievable that a mallet even existed because the police never recovered it.

Pursuant to Indiana Trial Rule 50, a trial court may withdraw issues from a jury where "all or some of the issues . . . are not supported by sufficient evidence[.]" To survive a motion for a directed verdict, the State must present a *prima facie* case. *State v. Taylor*, 863 N.E.2d 917, 920 (Ind. Ct. App. 2007). When considering such a motion, the trial court may not weigh the evidence presented or assess the credibility of witnesses. *Id*. at 919. The trial court may grant the motion only "'where there is a total absence of evidence upon some essential issue, or there is no conflict in the evidence and it is susceptible of but one

4

inference, and that inference is in favor of the accused.'" *Id.* (quoting *State v. Patsel*, 240 Ind. 240, 163 N.E.2d 602, 604 (1960)). The trial court in a criminal case is not authorized to consider whether a reasonable jury could view the evidence presented as constituting proof beyond a reasonable doubt. *Id.* (citing *State v. Goodrich*, 504 N.E.2d 1023, 1024 (Ind. 1987)). On review, we apply the same standard as the trial court: when considering the propriety of a directed verdict, we "view the evidence in a light most favorable to the party against whom judgment on the evidence would be entered." *Id.* (quotation omitted). "If the evidence is sufficient to sustain a conviction upon appeal, then a motion for a directed verdict is properly denied; thus our standard of review is essentially the same as that upon a challenge to the sufficiency of the evidence." *Edwards v. State*, 862 N.E.2d 1254, 1262 (Ind. Ct. App. 2007).

In this case, the State was required to prove beyond a reasonable doubt that Capps knowingly touched Ricketts in a rude, insolent, or angry manner, and that the touching was committed by means of a deadly weapon. Ind. Code § 35-42-2-1(a)(3). A deadly weapon has been defined as

> A destructive device, weapon, device, taser . . . or electronic stun weapon . . . equipment, chemical substance, or other material that in the manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury.

Ind. Code § 35-41-1-8(2).

Whether an object is a deadly weapon is determined by considering a description of the object, the manner of its use, and the circumstances of the case. *Davis v. State*, 835 N.E.2d 1102, 1112 (Ind. Ct. App. 2005). "Whether an object is a deadly weapon based on

5

these factors is a question of fact." *Miller v. State*, 500 N.E.2d 193, 197 (Ind. 1986). The original purpose of the object is not considered. Instead, the manner in which the defendant actually used the object is examined. *Timm v. State*, 644 N.E.2d 1235, 1238 (Ind. 1994). It does not matter if actual injuries were sustained by the crime victim, provided the defendant had the apparent ability to injure the victim seriously through his use of the object during the crime. *Miller*, 500 N.E.2d at 196-97. "Serious bodily injury" includes bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ. Ind. Code § 35-41-1-25.

In this case, Ricketts testified that when Capps was driving them back to Noblesville, Capps struck him once on the chest with a rubber mallet. Ricketts described the mallet as having a foot-long white wooden handle with a five-inch long and three inch diameter head. Ricketts testified that he felt pain when Capps struck him with the mallet, that he had a red mark on his chest, and that he was in pain for nearly three weeks after the incident. Capps is described as a big man. However, considering how the rubber mallet was used here, the rubber mallet was not a deadly weapon. The State argues as follows in its brief:

> Although [Ricketts] did not suffer serious bodily injury, the rubber mallet used by [Capps] to bludgeon [Ricketts] was entirely capable of doing so under the circumstances presented here. In fact, as used to strike [Ricketts] in the chest, it could readily have fractured his ribs *had [Capps] swung it harder.*

*Appellant's Br.* at 9. [Emphasis added.] The evidence establishes, however, that Capps did not swing it harder. Thus, as it was actually used here, the mallet was not a deadly weapon.

There is a distinction between weapons whose ordinary purpose is to inflict death or

6

serious bodily injury, i.e., a gun, and one that ordinarily will not do so, i.e., a rubber mallet. When the determination in a particular case of whether the weapon is a deadly weapon turns on how it was used, we must examine precisely that, not how it could have been used or whether the weapon was capable of inflicting serious bodily injury under different circumstances. Because there was insufficient evidence on an element of the crime charged, we conclude that the trial court erred by denying Capps's motion for directed verdict. The trial court should have directed a verdict on Battery as a C felony, but allowed the case to proceed on the inherently included offense of Battery as a Class A misdemeanor.[3] We reverse the decision of the trial court and remand the matter with instructions to the trial court to vacate Capps's conviction[4] and sentence on the C felony and to enter a judgment of conviction for and sentence on the inherently included offense of battery as an Class A misdemeanor.

## II. Jury Instructions

Capps next claims that his conviction for criminal confinement must be set aside because the jury was not properly instructed on this offense. More particularly, Capps argues that the confinement instruction was defective because the trial court failed to properly inform the jury of all the elements of that offense.

"The purpose of an instruction is to inform the jury of the law applicable to the facts

---

[3] *See* I.C. 35-42-2-1(a)(1)(A).

[4] Because we find the trial court erred by denying Capps's motion for directed verdict, we do not address his claims that the Ricketts's testimony regarding the mallet was inherently improbable and incredibly dubious.

7

without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Snell v. State*, 866 N.E.2d 392, 396 (Ind. Ct. App. 2007). The manner of instructing the jury is generally within the sound discretion of the trial court, and we review its decision only for an abuse of that discretion. *Boney v. State*, 880 N.E.2d 279, 293 (Ind. Ct. App. 2008). When reviewing a challenge to a jury instruction, we consider whether: (1) the instruction is a correct statement of the law; (2) there was evidence in the record to support giving the instruction; and (3) the substance of the instruction was covered by other instructions given by the trial court. *Id.* The ruling of the trial court will not be reversed unless the instructions, taken as a whole, misstate the law or mislead the jury. *Snell*, 866 N.E.2d at 396. In order to be entitled to a reversal, the defendant must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Id.* Nonetheless, errors in giving or refusing jury instructions are harmless where a conviction is clearly sustained by the evidence, and the jury could not properly have found otherwise. *Rhoton v. State*, 938 N.E.2d 1240, 1244 (Ind. Ct. App. 2010).

We note that the provisions of the confinement statute are that:

(a) A person who knowingly or intentionally:

> (2) removes another person, by ... threat of force, from one place to another; commits criminal confinement. Except as provided in subsection (b), the offense of criminal confinement is a Class D felony.

(b) The offense of criminal confinement defined in subsection (a) is:

> (1) a Class C felony if:

> > (B) is committed by using a vehicle. . . .

8

Ind. Code § 35-42-3-3(a), (b)(1)(B).

The instruction that was read to the jury of which Capps complains provides that:

Count 2: The crime of Criminal Confinement is defined by statute as follows:

A person who knowingly confines another person without the other person's consent commits criminal confinement.

Before you may convict the Defendant, the State must have proved each of the following elements beyond a reasonable doubt:

1. The Defendant

2. knowingly

3. removed Craig Evan Ricketts from one place to another

4. and Defendant used a motor vehicle to commit the removal. If the State failed to prove each of the elements beyond a reasonable doubt, you must find the Defendant not guilty of Criminal Confinement a class C felony as charged in Count 2.

*Appellant's App*. at 19.

In addressing Capps's argument that the confinement instruction was defective, we initially observe that he did not object to the giving of the instruction. To preserve error in an instruction given by the trial court, the defendant must typically object at trial to the giving of the instruction and set out his or her specific grounds for the objection. *Hall v. State*, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010). In this case, Capps failed to object at trial to the instruction that he now claims the trial court erroneously read to the jury. *Tr*. at 203-04. In fact, Capps specifically accepted the instruction of which he now complains. *Id*. at 266. Therefore, Capps has invited the error and has waived the issue. *Emerson v. State*, 952 N.E.2d 832, 838 (Ind. Ct. App. 2011), *trans. denied*.

In an effort to avoid waiver, Capps claims that giving the instruction quoted above constituted fundamental error. If an instruction is so flawed that it constitutes fundamental error, then the issue is not waived on appeal. *Hall*, 937 N.E.2d at 913. However, "fundamental error" is error that is so prejudicial to the defendant's rights that a fair trial is impossible. *Perez v. State*, 872 N.E.2d 208, 210 (Ind. Ct. App. 2007). That is, the error is a substantial, blatant violation of fundamental due process. *Hall*, 937 N.E.2d at 913. Nevertheless, as noted above, when considering whether a jury instruction amounts to fundamental error, we will consider the jury instructions as a whole to determine if they were adequate. *Emerson*, 952 N.E.2d at 838. So long as there is not a total failure to instruct on all of the necessary elements to convict, there is no fundamental error. *Nantz v. State*, 740 N.E.2d 1276, 1282 (Ind. Ct. App. 2001).

Although we note that the particular instruction quoted above may have been incomplete when considering the elements of the charged offense, other instructions given by the trial court informed the jury of the "by threat of force" element.

First, Final Instruction No. 2 informed the jury that

You are to consider all the instructions as a whole and are to regard each with the others given you. Do not single out any certain sentence or any individual point or instruction and ignore the others.

*Appellant's App.* at 17.

And second, Final Instruction No. 3 stated, in part:

Count 2: on or about October 2, 2010, William [B.] Capps Jr. did knowingly remove another person, to wit: Craig Evan Ricketts; by threat of force from one place to another; said offense being committed by using a vehicle . . . .

10

*Id*. at 18.

Final Instruction No. 3 specifically informed the jury that Capps's removal of Ricketts had to be "by threat of force," and Final Instruction No. 2 informed the jury that all of the instructions were to be considered together. As a result, we cannot say that there was a total failure to instruct the jury on all of the elements of the charged offense, and Capps's fundamental error claim fails. *See Nantz*, 740 N.E.2d at 1282-83 (observing that where other instructions given apprised jury of element of offense not included in elements instruction, incomplete elements instruction did not constitute fundamental error). We find no fundamental error in the instructions given to the jury.

Affirmed in part, reversed in part and remanded with instructions.

BROWN, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

WILLIAM B. CAPPS, JR.,         )
          )
    Appellant-Defendant,      )
          )
       vs.        )     No. 29A02-1108-CR-694
          )
STATE OF INDIANA,        )
          )
    Appellee-Plaintiff.      )

**BAKER, Judge, concurring in part and dissenting in part.**

I agree with the majority's conclusion that Capps's fundamental error claim fails with regard to the final instructions. However, I part ways with the majority's decision to reverse Capps's conviction and sentence for battery, a class C felony.

More particularly, I cannot agree with the determination that the rubber mallet in this instance did not constitute a deadly weapon within the meaning of Indiana Code section 35-41-1-8(2). As Indiana Code section 35-41-1-25 provides, "serious bodily injury" includes bodily injury that "causes . . . extreme pain."

As the majority observes, whether an object is a deadly weapon based on the description of

the object, the manner of its use, and the circumstances of the case, is a question of fact. Slip op. at 6, citing Miller v. State, 500 N.E.2d 193, 197 (Ind. 1986). It is also not necessary that the victim actually suffered a serious bodily injury. Rather, it is only necessary to determine whether the object had the actual ability to inflict serious bodily injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime. Rogers v. State, 537 N.E.2d 481, 485 (Ind. 1989).

In this case, Ricketts testified that Capps struck him in the chest once with the mallet. Tr. p. 135-37, 152. Ricketts testified that he felt pain when Capps hit him with the mallet, that he had a red mark on his chest, and that he was in pain for nearly three weeks after the incident. Id. at 142; Ex. 5. In my view, these circumstances demonstrate that the object that Ricketts described could readily be used to strike another person sufficiently hard as to be capable of causing serious bodily injury. That said, I believe that the finder of fact could reasonably conclude that the mallet that Capps struck Ricketts with constituted a deadly weapon. See Rogers, 537 N.E.2d at 484 (citing cases where a screwdriver, a crowbar wrapped in a towel, and a piece of asphalt were held to constitute deadly weapons); Cummings v. State, 270 Ind. 251, 254, 384 N.E.2d 605, 606 (1979) (holding that a stapler constituted a deadly weapon where it was used as a bludgeoning instrument). As a result, I vote to affirm Capps's convictions and sentences in all respects.